(No. 24193.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. A. DUBIN, Plaintiff in Error.

*Opinion filed October 22, 1937.*

230

SIDNEY R. KORSHAK, and EDWARD S. KING, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

An information lodged in the municipal court of Chicago charged that, on September 10, 1936, the defendant, A. A. Dubin, operated dental offices at 84 West Madison street, Chicago, and that he there committed certain violations of the Dental Practice act. Dr. Durbin was found guilty by a jury and was fined $500 and costs. He has sued out this writ of error and has challenged the constitutionality of section 18b of the Dental Practice act of 1909, as amended July 7, 1933. (Laws of 1933, p. 708.) The other points urged are, that the court erred in overruling his motion to suppress, made before the trial, and that immaterial and prejudicial evidence was admitted.

The defendant first contends that section 18b of the Dental Practice act is so indefinite, uncertain and puzzling that men of ordinary intelligence must necessarily guess at its application and that, therefore, it denies him due process of law in violation of section 2 of article 2 of the

constitution of 1870, and the fourteenth amendment to the constitution of the United States.

Section 18*b* provides: "It shall be unlawful for any person, firm or corporation to publish, directly or indirectly, or circulate any fraudulent, false or misleading statements as to the skill or method of practice of any person or operator; or in any way to advertise to practice dentistry without causing pain; or to advertise in any manner with a view of deceiving the public, or in any way that will tend to deceive or defraud the public; or to claim superiority over neighboring dental practitioners; or to publish reports of cases or certificates of same in any public advertising *media;* or to advertise as using any anesthetic, drug, formula, material, medicine, method or system, which is either falsely advertised or misnamed; or to advertise free dental services or examinations as·an inducement to secure dental patronage; or to advertise any amount as a price or fee for· the service or services of any person engaged as principal or agent in the practice of dentistry, or for any material or materials whatsoever used or to be used; or to employ 'cappers' or 'steerers' to obtain patronage or to exhibit or use specimens of dental work, posters, or any other *media* calling attention of the public to any person engaged in the practice of dentistry; or to give a public demonstration of skill or methods of practicing dentistry upon or along the streets or highways, or any place other than his office where he is known to be regularly engaged in the practice of his profession, and any person committing an offense against any of the provisions of this section, shall, upon conviction, be subjected to such penalties as are provided in this act; *provided,* that any person licensed under this act may announce by way of a professional card containing only the name, title, degree, office location, office hours, phone number, and residence address and phone number, if desired, and if he limits his practice to a specialty, he may announce it, but such card shall not be greater in size

than three and one-half (3½) inches by two (2) inches, and such information may be inserted in public print when not more than one column in width and two (2) inches in depth; or announce his change of place of business, absence from, or return to business in the same manner; or issue appointment cards to his patients, when the information thereon is limited to matter pertaining to the time and place of appointment and that permitted on the professional card; or display the name of the licensee, on the premises where engaged in the profession, upon the windows thereof and by a door plate or name or office directory when the information is limited to that of the professional card. *Provided,* that the name and title of the registrant shall not be displayed in lettering larger than seven (7) inches. However, nothing in this act shall prohibit any person licensed to practice dentistry under the provisions of this act, from publicly announcing and informing the public in periods of economic stress and depression, that his fee and price for dental services and examination has been reduced to conform with the reduced prices of commodities and services, but no statement of the amount of such fees or prices shall be included."

The entire Dental Practice act was upheld in *Winberry* v. *Hallihan,* 361 Ill. 121, as not being an abuse of the police power of the State, but the points here raised were not decided. The defendant contends that the words, "cappers" or "steerers," are meaningless phrases which are not defined in the section, and that they render that portion of the section impossible of uniform application. The same attack is made on the words, "periods of economic stress and depression," and *"media."* Defendant relies upon *Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160, and other cases, holding that the terms used in a statute must be definite and certain. Section 18*b* of the Dental Practice act does not violate, but, on the contrary, complies with this rule. The section regulates advertising by dentists. It forbids the

advertising of any anesthetic, drug, formula, materials, medicine, method or system which is either falsely advertised or misnamed; the advertisement of free dental service or examinations as an inducement to secure dental patronage; the advertisement of prices or fees for services; the use of "cappers" or "steerers" to obtain patronage, or the use of specimens of dental work, or any other *media*, calling attention of the public to any person engaged in the practice of dentistry. It then sets out what advertising is permitted. The act leaves no doubt about the rights of dentists to advertise, and they may do so only within the limits it sets. The words, "cappers" or "steerers," have a commonly accepted meaning, and the legislature was not bound to define those terms. The legislative intent was to forbid the obtaining of patronage by the use of solicitors or specimens of dental work, posters, or any other *media*, calling the attention of the public to any person engaged in the practice of dentistry, except to the limited extent permitted by the act. When the defendant employed solicitors, a loud-speaker, a card trick, a lecture, a sale of tooth-powder, with a right to the purchaser to have his teeth cleaned, and a free and painless extraction in an open store-room, he knew, or should have known without guessing, that he was violating the plain provisions of this statute.

The defendant is not being prosecuted for advertising that his fees and prices for dental services have been reduced, when there was, in fact, no period of economic stress and depression. The information charged, and the proof showed, among other things, that he was guilty of advertising free dental services and examinations as an inducement to secure dental patronage; of advertising to practice painless dentistry; of advertising that payments for dental services could be made over a period of ten months at as low as one dollar per month; of employing "cappers" or "steerers" to obtain patronage; of using specimens of dental work to gain the attention of the public, and of distributing

circulars, or "pluggers," which contained information not permitted by the statute. He did these things at his various offices, but his main office was at 84 West Madison street. He is, therefore, in no position to complain that that part of section 18*b* which authorizes a dentist to notify the public that his prices have been reduced on account of a period of economic stress or depression, is void for uncertainty. Even if this were true, that part of the section could readily be deleted without invalidating the whole act. *People* v. *Williams,* 309 Ill. 492.

It is next contended that, at the time of Dubin's arrest on the street near his office, his premises at 84 West Madison street were illegally searched, and certain exhibits, which were introduced in evidence in this cause, were unlawfully seized, contrary to section 6 of article 2 of the constitution of 1870 and the fourth amendment to the constitution of the United States, and that the trial court erred in not ordering the return of the exhibits. Several police officers, and an assistant State's attorney, went to Dubin's main dental offices at 84 West Madison street, about noon on September 10, 1936. The ground floor was a storeroom with folding doors across the entire front at sidewalk level. These doors were open and officer Driscoll testified that he saw a loud-speaker near the door. A microphone was hanging over the platform in the rear of the room near a dental chair and an instrument table. This witness saw and heard Dr. Dubin's employee, Gaines, attracting the public's attention by means of a card trick. Later Gaines asked a crowd if any one wanted a tooth pulled free of charge and painlessly. One man accepted this invitation. Gaines also advertised Dr. Dubin's Tooth-Powder for sale at twenty-five cents a can. Each purchase entitled the buyer to a free examination and cleaning of his teeth. Several persons bought the tooth-powder. Gaines also exhibited a needle, or dental instrument, used in so-called painless extractions. This testimony was substantiated by officers Ciros and Foley

and by George Starkey. Gaines testified that he started the card trick near the sidewalk and finished it on the platform. The officers, besides being armed with a warrant for the arrest of the defendant, saw and heard the above acts being committed. They had reason to suspect a misdemeanor was being committed, and, as incidental to the arrest, were authorized to search for, and to seize, any property pertaining to this crime. (*Marron* v. *United States*, 275 U. S. 192, 48 Sup. Ct. 74.) In that case one Birdsall was lawfully arrested. In upholding the search made as incidental to the arrest, the court said: "They had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. [Citing cases.] The closet in which liquor and the ledger were found was used as a part of the saloon. And, if the ledger was not as essential to the maintenance of the establishment as were bottles, liquors and glasses, it was none the less a part of the outfit or equipment actually used to commit the offense. And, while it was not on Birdsall's person at the time of his arrest, it was in his immediate possession and control. The authority of officers to search and seize the things by which the nuisance was being maintained extended to all parts of the premises used for the unlawful purpose."

The court did not err in overruling the motion to suppress the evidence thus obtained.

The defendant contends that much of the testimony of Mary O'Connell, employed by the defendant at 6456 South Halsted street, Sam Le Pon, Abe Katz, Charles Samuelson, Adeline Hagen, M. H. Korngoot, and other employees of defendant, showed other crimes of the defendant and was immaterial and prejudicial. This evidence showed that Dubin hired and paid persons to distribute circulars which did not comply with section 18*b*, and also where they received the circulars and where they distributed them. It also showed defendant's association with the various offices

he conducted near Chicago. The crimes were so interdependent and connected that proof of one was not coherent without proof of others. The proof showed a general design and intent to violate the Dental Practice act and was material. *Clark* v. *People,* 224 Ill. 554; 1 Wharton on Crim. Evidence, (11th ed.) sec. 552.

The defendant cannot complain of his cross-examination as to previous trouble he had had, because he had touched upon it on his examination in chief, and it was entirely proper to bring out the details on cross-examination. (*People* v. *Miller,* 342 Ill. 244.) Moreover, the scope of cross-examination is largely within the discretion of the trial judge, and we cannot say that there was an abuse of that discretion.

There is no prejudicial error in the record, and the judgment of the municipal court is affirmed.

*Judgment affirmed.*