*In re* SANCHICK.

SANCHICK *v.* STATE BOARD OF EXAMINERS IN OPTOMETRY.

1. PHYSICIANS AND SURGEONS—OPTOMETRY—CAPPERS—STEERERS— CONSTRUCTION OF STATUTES.
   The words "capper" and "steerer," as used in act regulating optometry and proscribing their use by optometrists, have a commonly-accepted meaning and the elements of fleecing, swindling or fraud are not necessary factors thereof (CL 1948, § 338.254).

2. SAME—OPTOMETRY—EMPLOYMENT.
   The term "employment," as used in the act regulating the practice of optometry, is synonymous with the word "use" (CL 1948, § 338.254).

3. SAME—OPTOMETRY—CANCELLATION OF LICENSE—EVIDENCE.
   Assertion of board of examiners in optometry that defendant optometrist was guilty of such grossly unprofessional, unethical and dishonest conduct as to justify cancellation of his license as an optometrist *held*, not justified by a showing that his office was next door to that of an optical company and that patrons were referred to him by an employee of the company, where there is no evidence of fee splitting or other

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Physicians and Surgeons § 51.
[3] 41 Am Jur, Physicians and Surgeons §§ 28, 48 *et seq.*

financial arrangements between him and the company (CL 1948, § 338.254).

Appeal from Ingham; Hayden (Charles H.), J. Submitted January 8, 1957. (Docket No. 14, Calendar No. 47,018.) Decided February 28, 1957.

Petition by Edwin L. Sanchick to review determination of Michigan State Board of Examiners in Optometry suspending license for alleged unprofessional conduct. Judgment for defendant. Plaintiff appeals. Reversed and order of suspension set aside.

*Paul B. Barak* and *Ernest Goodman* (*Stanley E. Beattie,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendant.

SHARPE, J. This action was commenced before the Michigan board of examiners in optometry, by virtue of the provisions of PA 1909, No 71, as amended. (CL 1948 and CLS 1954, § 338.251 *et seq.* [Stat Ann 1956 Rev § 14.641 *et seq.*]), and the provisions of the administrative procedure act, PA 1952, No 197, as amended (CLS 1954, § 24.101 *et seq.* [Stat Ann 1952 Rev and Stat Ann 1955 Cum Supp § 3.560(21.1) *et seq.*]). The purpose of the action was to suspend or revoke the license of Edwin L. Sanchick. The essential facts are not in dispute and are as follows.

In September, 1954, a complaint was made against Edwin L. Sanchick to the State board of examiners in optometry to revoke his license. The hearing was scheduled for October 14, 1954, but before said date, and on October 11, 1954, Edwin L. Sanchick filed a bill of complaint in the circuit court of Ingham county to restrain the board from holding the hear-

ing. On December 20, 1954, the circuit court dismissed the bill of complaint. An appeal was taken to the Supreme Court, and on June 6, 1955, we affirmed the order of the trial court. See *Sanchick* v. *State Board of Optometry*, 342 Mich 555. On July 28, 1955, an amended complaint was filed against Edwin L. Sanchick, in which it was charged:

"Now comes Karl G. Braun, under and by virtue of the provisions of PA 1909, No 71, as amended (CL 1948 and CLS 1954, § 338.251 *et seq.* [Stat Ann 1956 Rev § 14.641 *et seq.*]), and in making complaint to the board of examiners in optometry, says:

"1. That he is informed and believes and charges the fact to be that Edwin L. Sanchick, licensed by your board, has been guilty of grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public, in that he has employed the King Optical Company as a 'capper' or 'steerer' to obtain business; and that said King Optical Company, by its employee and agent did on the 17th day of August, A.D. 1954, send this complainant to the said licensee, Edwin L. Sanchick, for a prescription for glasses."

The board took testimony, which in substance is as follows:

"Prior to August, 1954, appellant (Edwin L. Sanchick) had been engaged in the practice of optometry in the city of Detroit. No complaints had previously been filed against him. Several weeks prior to August 17, 1954, when the board's employee Braun began his investigation in this case, appellant had moved into an office on the 4th floor of the Tussing building in Lansing, Michigan. This office had previously been occupied by Dr. Zerka, an optometrist, at least as far back as 1952, and previously had apparently been occupied by another optometrist.

"The office occupied by appellant adjoined the office of the King Optical Company. * * *

"1. The 2 offices were listed separately on the building directory.

"2. Each office is a separate integrated establishment with separate entrances leading from the building corridor.

"3. Each office has its own name on the corridor door.

"4. Each office has its own stationery with its own name, address and telephone number.

"On August 17, 1954, board investigator Braun, and on October 13, 1954, Patricia Langmaack, Donna Bussard, Wanda Franks and Robert Fowler went to the office of the King Optical Company to buy glasses, the 3 (2 of the) women using false names. All came without prescriptions and, when they were advised that the King Optical Company could not sell glasses without a prescription, were referred to the appellant in the neighboring office.

"The witnesses then went into appellant's office for the purpose of having their eyes examined. One witness was personally escorted (by an employee of King Optical Co.). Appellant made the examinations and wrote the needed prescriptions for glasses. The charge for this service in each case was $3 which was paid by the witness directly to appellant and for which he or she received a receipt from him.

"Thereafter, each witness returned to the office of the King Optical Company with the prescription received from appellant, where he or she selected the desired frame, paid in whole or in part for the glasses and frame and received a receipt therefor from the optical company. In most instances, upon receiving mailed notification that the glasses were ready, the witnesses later returned to the King Optical Company, paid the balance due and received their glasses."

On August 8, 1956, the trial court entered an order affirming the finding of facts of the board and entered an order dismissing the injunction heretofore entered in the cause.

Section 4 of PA 1909, No 71, as amended (CL 1948, § 338.254 [Stat Ann 1956 Rev § 14.644]), provides, in part:

"The board of examiners in optometry shall refuse to issue the certificate of registration provided for in this act to any person who shall have been guilty of grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public, and may suspend or revoke such certificate for like reasons.

" 'Unprofessional and dishonest conduct'. as used in this act is hereby declared to mean:

"(a) The loaning of his license by any licensed optometrist to any person; the employment of 'cappers' or 'steerers' to obtain business; 'splitting' or dividing a fee with any person or persons; the advertising by any means whatsoever of optometric practice or treatment or advice in which untruthful, improbable, misleading or impossible statements are made."

In the case of *Sanchick* v. *State Board of Optometry, supra,* 563, we had occasion to express our views on the words "capper" and "steerer." We there said:

"The short answer to appellant's arguments respecting the use of the words 'capper' and 'steerer' is that they have a commonly-accepted meaning (*People* v. *Dubin,* 367 Ill 229 [10 NE2d 809]), and the elements of fleecing or swindling or fraud are not necessary factors thereof."

We did not have occasion to define the word "employment," however the trial court in discussing the use of this word stated:

"Furthermore, the word 'employ' is defined as 'to make use of' (Webster's New International Dictionary,. page 839) and there is no material distinction in meaning between the statutory provisions and the rules and regulations of this board. In their

usually accepted meaning the word 'employ' and the word 'use' are synonymous."

The trial court also stated in his opinion:

"In conclusion, it needs only to be said that the history of the office of Dr. Sanchick, its proximity to the King Optical Company, the correspondence between the board and Dr. Sanchick and the factual and undisputed testimony of all the witnesses leads directly and inevitably to the conclusion that Dr. Sanchick was seeking to and did use the King Optical Company to funnel business into his office, in such a manner and by such means, as to constitute a violation of the statute, rules and regulations, and that to deny the same is to deny the obvious."

Appellant appeals and urges that there is no evidence to support the finding that he employed the King Optical Company as a "capper" and "steerer" as intended by the legislation enacted.

In coming to our conclusion on this issue we have in mind that appellant had a right to rent the office next door to the King Optical Company; that in order to cancel his license it became the duty of the complaining party to support such charges with competent evidence; that appellant had a right to examine patients referred to him by the employees of King Optical Company or by any other parties. We also observe that there is no evidence of fee splitting or other financial arrangements between appellant and King Optical Company. We are asked to find from the facts that appellant occupies an office next door to King Optical Company and patients are referred to him by such company; that some contractual agreement exists between the parties and that purported agreement was of a character likely to deceive the public. We cannot so find. The record fails to support such an assertion.

The order suspending appellant is reversed and set aside, with costs to appellant.

Dethmers, C. J., and Smith, Edwards, Voelker, Kelly, Carr, and Black, JJ., concurred.