**Robert E. BRESLER, O.D., et al.,
Respondents,**

v.

**E. J. TIETJEN, Jr., O.D., et al., as Members
of and Constituting the Missouri State
Board of Optometry, Appellants.**

No. 51781.

Supreme Court of Missouri,
En Banc.

Feb. 12, 1968.

Charles H. Howard, George A. Rozier, Cullen Coil, Jefferson City, Attys. for respondents. Hendren & Andrae, Carson, Inglish, Monaco & Coil, Jefferson City, of counsel.

Norman H. Anderson, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, Attys., for appellants.

Albert E. Schoenbeck, St. Louis, Atty., for amicus curiae.

HOLMAN, Chief Justice.

This suit for a declaratory judgment was instituted by nineteen optometrists against the members of the Missouri State Board of Optometry. They allege that a portion of § 336.110 (all statutory references are to RSMo 1959, V.A.M.S.) is unconstitutional, and that four rules promulgated by the defendants under the rule-making power given them in § 336.160 are invalid. The judgment of the trial court was in favor of plaintiffs and defendants have appealed. We have jurisdiction because one of the questions presented involves the construction of a provision of the State Constitution. Mo.Const., Art. 5, § 3, V.A.M.S.

This appeal was originally heard in Division II and the case was subsequently transferred to Court en Banc. Portions of an opinion prepared in division (which was not adopted) are here adopted without the use of quotation marks.

The parties stipulated that "a justiciable controversy exists between plaintiffs and defendants in that an actual controversy exists between them * * * and that if said Rules 17 to 20 as promulgated by the Missouri State Board of Optometry are valid and are enforced plaintiffs would be subject to having their certificates of registration authorizing them to practice optometry in Missouri suspended or revoked if they continue in their practices as presently conducted." There is no substantial dispute about the facts and very little need be stated concerning them. Two of the defendants testified at the trial and the deposition of each of the plaintiffs was admitted. We think it is fair to say, in a

very general way, that each of the plaintiffs practice optometry in an office located next door to an optical salesroom operated by either the King, Lee, or Douglas Optical Company; that the optical companies involved widely advertise the price of prescription glasses; that many people who go to the salesroom do not have a prescription and are told they must obtain one before they may purchase glasses; that either by reference or by reason of the proximity of his office most of those people immediately go to the optometrist in the adjoining office for an examination and prescription for which they pay the optometrist a fee which is usually $5.00; that after obtaining the prescription most of these people go back to the nearby optical salesroom and purchase their glasses.

The evidence indicates that as an inducement for plaintiffs to lease the adjoining office the optical companies usually make certain financial concessions to them. In many instances they were given free rent and sometimes a guaranteed minimum weekly income.

It also appears from defendants' evidence that the real alleged evil the defendants are seeking to eliminate by the rules hereinafter discussed is *price* advertising by optical companies over whom they have no jurisdiction. Apparently they have the view that the optical stores could not sell glasses at the prices advertised and make enough profit to remain in business without the cooperation of plaintiffs in the manner heretofore outlined. Defendants testified that the State Board and the Missouri Optometric Association have unsuccessfully sponsored bills in the legislature on a number of occasions which sought to accomplish the same results as would be accomplished by the rules in question.

The provisions of several statutes must be summarized or parts thereof set out in full. Section 336.010 defines what constitutes the practice of optometry, and briefly stated it consists of the examination of the human eye, without the use of drugs,

medicine, or surgery to ascertain defects and abnormal conditions, and the prescription or adaption of lenses, prisms, or ocular exercises to correct defects and abnormal conditions and to adjust the eye to conditions of special occupation. The important and material factor to the issues in this case is that the sale of eyeglasses, whether or not on prescription, does not constitute the practice of optometry. Section 336.120; Ketring v. Sturges, Mo., 372 S.W.2d 104, 113. Section 336.030 prescribes who are qualified to receive a "certificate of registration" as an optometrist, and subsection 1 of § 336.110 provides that the board "may either refuse to issue, or may refuse to renew, or may suspend, or may revoke any certificate of registration" for any one or combination of enumerated causes including:

"(5) Advertising by means of knowingly false or deceptive statements;

"(6) Advertising, practicing or attempting to practice under a name other than one's own;

"(7) Advertising, directly or indirectly, prices or terms for optometric services;

"(8) Gross ignorance, gross inefficiency, or dishonorable conduct in optometric practice. Dishonorable conduct in optometric shall include, but shall not be limited to, employing what is known as procurers to obtain business; and the obtaining of any fee by fraud or misrepresentation."

Section 336.160 provides that the Board may adopt "reasonable rules and regulations within the scope and terms" of Chapter 336 "for the proper administration and enforcement thereof."

The findings and judgment of the trial court included the following:

"1. That Rules Nos. 17, 18, 19 and 20 of the Rules and Regulations of the Missouri State Board of Optometry are and each of them is invalid, illegal, un-

constitutional, arbitrary, unreasonable, void and of no force or effect.

"2. That the Missouri State Board of Optometry and the members, agents and employees thereof and all persons acting under the direction and authority of them are hereby perpetually enjoined and restrained from enforcing or attempting to enforce in any manner whatsoever any or all, or any portion or portions, of said Rules Nos. 17, 18, 19 and 20.

"3. That Section 336.110, RSMo 1959, is in violation of Section 1, Article III of the Constitution of Missouri insofar as subdivision 1(8) thereof provides that 'dishonorable conduct in optometric practice shall include  *  *  *  employing what is known as procurers to obtain business  *  *  *.' "

■ Plaintiffs contend that the provision of § 336.110 which states that "dishonorable conduct in optometric practice shall include  *  *  *  employing what is known as procurers to obtain business" constitutes "an unlawful delegation of a legislative function to the State Board of Optometry, in that it delegates to the Board the unlimited and unbridled power to determine who or what constitutes 'what is known as procurers to obtain business' in the 'optometric practice.' " They argue that the phrase is so vague and indefinite as to be incapable of intelligent interpretation and enforcement. We do not agree. We need not set forth the general rules concerning the prohibition against a delegation of legislative functions to an administrative body. They may be found, among other places, in 1 Am.Jur.2d, Administrative Law, §§ 100–114, and 73 C.J.S. Public Administrative Bodies and Procedure §§ 28–35. In Ketring v. Sturges, Mo., 372 S.W.2d 104, 111, this court stated that "the legislature could confer upon the board the au-

thority to revoke a license for 'dishonorable conduct' without specifying every act which should constitute dishonorable conduct, and leave it to the board to determine in a particular case what amounts to dishonorable conduct."[1] See State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 65 S.W.2d 943, Rust v. Missouri Dental Board, 348 Mo. 616, 155 S.W.2d 80, and Hughes v. State Board of Health, 348 Mo. 1236, 159 S.W.2d 277. Plaintiffs do not attack, and the trial court did not rule invalid, this grant of power to the Board to revoke a certificate of registration for dishonorable conduct in optometric practice. The ruling of the trial court, and plaintiffs' attack, pertain to the phrase whereby the legislature has defined certain conduct (that of "employing what is known as procurers to obtain business") as constituting dishonorable conduct in optometric practice. They argue that by using the phrase "what is known as procurers" the legislature intended to proscribe a particular practice known in optometric circles, and we think that is correct. But, we do not agree that it was incumbent upon the legislature to describe further the conduct it intended to prohibit. The legislative intent was to declare that for an optometrist to obtain patients for optometric services by use of solicitors, or what is sometimes referred to as "runners," would constitute dishonorable conduct in optometric practice. The word "procurers" must be read in connection with "optometric practice," and when that is done the words take on a commonly accepted meaning in optometric circles. See, for purposes of comparison, People v. Dubin, 367 Ill. 229, 10 N.E.2d 809, and Reyburn v. Minnesota State Board of Optometry, 247 Minn. 520, 78 N.W.2d 351. By the use of the word "procurers" the legislature distinguished between customers referred to an optometrist by a satisfied previous customer or friend without any

---

1. At the time the opinion in the Ketring case was written the Board determined in the first instance whether or not "conduct" constituted "dishonorable conduct" in optometric practice. Now that deter- mination is made by the Administrative Hearing Commission. §§ 161.252 and 161.272, RSMo 1965 Cum.Supp., V.A. M.S.

agreement or understanding between the optometrist and the previous customer or friend, and those customers obtained as the result of an agreement or arrangement whereby customers are referred to an optometrist for pecuniary or business reasons. We are of the opinion that the legislature, by the language used, has established a sufficiently definite policy, standard, or rule, and therefore the statutory provision in question is not an improper delegation of legislative power. We necessarily conclude that the trial court erred in holding that part of § 336.110 referred to in the trial court's judgment to be unconstitutional.

The four rules which are alleged to be invalid are as follows:

### "RULE 17

"A licensed optometrist shall be deemed to be 'advertising, practicing, or attempting to practice under a name other than his own', 'advertising directly or indirectly prices or terms for optometric services' and [2] 'dishonorable conduct in optometric practice' by employing procurers to obtain business in violation of Section 336.-110, subsection [3] (1), (6), (7), and (8) RSMo, if such optometrist shall become affiliated with any person, firm, corporation or association of any kind which shall advertise directly or indirectly prices or terms for optometric services as defined by Section 336.110, RSMo."

### "RULE 18

"A licensed optometrist shall be deemed to be 'advertising by means of knowingly false and deceptive statements' and to be engaged in 'dishonorable conduct in optometric practices' by employing procurers to obtain business in violation of § 336.110, subsection (1), (5), and (8), RSMo, if such optometrist shall become affiliated with any person, firm, corporation or association of any kind which shall advertise prices for prescription eyeglasses or prescription eyeglass lenses without clearly stating in such advertisement that such prices do not include the cost of an eye examination, a prescription, or other optometric service."

### "RULE 19

"A licensed optometrist shall be deemed to be affiliated with another person (which term shall include any firm, corporation or association of any kind), if said optometrist is employed by such person; or, if he has entered into an agreement or arrangement of any kind, either formal or informal, under which said person shall rent or lease room or space to said optometrist for the practice of optometry; or, if such person has agreed to pay said optometrist for the performance of optometric services or has agreed to guarantee said optometrist a definite income to be derived from the practice of optometry or has agreed to pay or repay expenses incurred by said optometrist in said practice of optometry."

### "RULE 20

"It shall be deemed to be 'dishonorable conduct in optometric practice' by employing procurers to obtain business in violation of § 336.110, subsection (1) and (8), RSMo, for any licensed optometrist to enter into a written agreement or an oral understanding or to make, maintain or participate in a formal or informal arrangement with any person, firm or corporation that advertises prices for prescription eyeglasses or prescription eyeglass lenses if according to the terms of such agreement or understanding, before such prescription eyeglasses or prescrip-

---

2. Apparently the words "guilty of" were omitted here.

3. In Rules 17, 18, and 20, the references obviously should be to § 336.110, subsection 1, and to paragraphs (5), (6), (7) or (8).

tion eyeglass lenses are furnished or delivered to a user attracted by such advertisement.[4] Such user usually or customarily will be referred by said person, firm or corporation or its agents or employees to said optometrist to perform professional optometric services for such user."

■ In view of the general nature of the Declaratory Judgment Act, see § 527.010 et seq., we are of the opinion that this is an appropriate action for a determination of the validity of such of the challenged rules as actually present a justiciable controversy. Plaintiffs are entitled to a determination which will terminate the uncertainty as to whether their manner of dealing with the optical companies constitutes grounds for revocation of their certificates of registration under the provisions of § 336.110.

■ In Ketring v. Sturges, supra, this court stated that in view of the regulatory authority conferred upon the Board, see § 336.160, it could define in advance some conduct which it would consider dishonorable conduct in the practice of optometry. By the same token the Board may define in advance some conduct which it would consider to constitute "employing what is known as procurers to obtain business," and what it would consider to constitute "advertising" in violation of paragraphs (5), (6) and (7) of subsection 1 of § 336.110. However, under the guise of its rule-making power the Board cannot enlarge upon the scope and terms of the statute, and it cannot by rule constitute certain conduct a violation of the statute, which, in the absence of the rule, could not reasonably be so construed. When acting within its rule-making authority, "the board's judgment in such matters should be disturbed only if the rule is unreasonable," and "greater deference should be paid the board's determination because they, being

members of the profession, are more aware of the standards of conduct which the profession exacts of its members, and thus are in a better condition to judge what is dishonorable conduct [and prohibited advertising] in the practice of an optometrist." Ketring v. Sturges, supra, 372 S.W.2d at p. 111.

At the outset of our consideration of the aforementioned rules we observe that it would be reasonable to suspect that all of those rules are invalid when we consider that admittedly the primary, though indirect, objective the Board sought to achieve by adopting the rules was to eliminate the advertising of *prices* by optical companies over whom the Board had no jurisdiction or control. We also deem it appropriate to consider that the Board, in construing the provisions of § 336.110, evidently entertained doubt as to its authority to adopt valid rules of the nature of those in question since there is evidence that the Board has unsuccessfully attempted to obtain passage of legislation which would have accomplished the same objectives.

It should be noted that Rule 19 does not describe any conduct which in the opinion of the Board amounts to a violation of § 336.110. It has efficacy only insofar as it is read and considered in connection with Rules 17 and 18. The rule defines the word "affiliated" used in Rules 17 and 18 and specifies five situations, any one of which would be deemed to result in a licensed optometrist being affiliated with another person, firm, corporation or association. We will discuss this rule further after we have considered the contention that the other rules are invalid.

Rule 17 provides that an optometrist shall be deemed to be in violation of paragraphs (6), (7), (8) of subsection 1, § 336.110, if in any of the five ways specified in Rule 19 he is "affiliated" with a person (which includes a firm, corporation, or association) "which shall advertise directly

4. This period obviously should be a comma and the next word should not start a new sentence.

or indirectly prices or terms for optometric services as defined by Section 336.110." As previously noted, "optometric services" do not include the sale of eyeglasses, frames, or lenses, or the advertisement thereof. Ketring v. Sturges, Mo., supra, at p. 113. Plaintiffs did not allege that they or any of them were "affiliated" with a person who advertised prices or terms for *optometric services,* and there was no proof of such affiliation. Although the parties stipulated to the legal conclusion that a justiciable controversy exists, it obviously does not as to Rule 17. Therefore, the validity of Rule 17 is not before us.

Rule 18 provides that an optometrist shall be "deemed" to be in violation of paragraphs (5) and (8) of subsection 1, § 336.110 if (by reference to Rule 19) (1) such optometrist shall be "employed by" another person, *or* (2) such optometrist shall enter into an "agreement or arrangement" to rent or lease from another person space for the practice of optometry, *or* (3) another person has "agreed to pay said optometrist for the performance of optometric services," *or* (4) another person has agreed "to guarantee said optometrist a definite income to be derived from the practice of optometry," *or* (5) another person has "agreed to pay or repay expenses incurred · by said optometrist in said practice of optometry," *and* such other person shall "advertise prices for prescription eyeglasses or prescription eyeglass lenses without clearly stating in such advertisement that such prices do not include the cost of an eye examination, a prescription, or other optometrical service."

■ It should be noted that by Rule 18 the Board has not attempted to declare that an optometrist will be presumed to have violated § 336.110 on the basis that he has entered into any of the five arrangements described in Rule 19 which the Board declares will create a presumption of "affiliation." A presumed violation occurs *only* if one of the arrangements exists

*and* the other person advertises the price or terms for prescription eyeglasses or prescription eyeglass lenses without clearly stating in such advertisement that the advertised price does not include the cost of an eye examination, a prescription, or other optometrical services. If this does occur, the Board has decreed, the optometrist shall be presumed to be guilty of "advertising by means of knowingly false and deceptive statements," and to be guilty of dishonorable conduct in optometric practice "by employing procurers to obtain business." We consider this to be a non sequitur. An optician or other person engaged in selling eyeglasses, eyeglass lenses, or frames may lawfully advertise the price thereof whether or not on prescription, and we know of no requirement that the optician or other person, not an optometrist, must place in his advertisement that the advertised price does not include the cost of a service he is not authorized by law to furnish. We fail to see how the lawful conduct of "another person" with whom an optometrist is "affiliated", which affiliation by itself is not specified by the Board to be unlawful, can result in a presumption that the optometrist is engaged in advertising by means of false and deceptive statements, or is employing procurers to obtain business. Section 336.110 cannot reasonably be given such a meaning, and, therefore, since it goes beyond the scope of the statute, Rule 18 is invalid.

Rule 20 provides that an optometrist shall be deemed to be employing procurers to obtain business, and violating paragraph (8) of subsection 1, § 336.110, if (1) he has entered into an agreement or understanding to participate in an "arrangement" with another person *who advertises prices for prescription eyeglasses or prescription eyeglasses lenses,* and (2) by the terms of such agreement or understanding before the prescription eyeglasses or prescription eyeglass lenses are furnished to "a user attracted by such advertisement," such "user usually or customarily will be referred" by such other person to said

optometrist for him to perform professional optometric services for such user.

■ This rule purports to create a presumption of employing what is known as procurers to obtain business, and we are of the opinion that under certain facts and circumstances an optometrist could reasonably be found to be so engaged when he has an arrangement with another to refer persons to him for optometric services. However Rule 20 is actually not directed against arrangements as such where referrals occur; it is limited to such arrangements by an optometrist with another person who "advertises prices for prescription eyeglasses or prescription eyeglass lenses." Therefore, the essential element in the activity proscribed by the rule is the lawful activity of a person not under the jurisdiction or supervision of the Board. For example, two optometrists may enter into identical "understandings" to participate in an "arrangement" (to use the language of Rule 20) with two opticians. One optician advertises the "prices for prescription eyeglasses [and] prescription eyeglass lenses." The other also advertises, and in his advertisement says identically the same as the first except he does not include in the advertisements the "prices for prescription eyeglasses or prescription eyeglass lenses." Under Rule 20 one optometrist is presumed to be "employing procurers to obtain business" in violation of paragraph (8) of subsection 1, § 336.110, and the other is not. Yet, paragraph (8) has nothing to do with who may or may not advertise the price of eyeglasses. We necessarily conclude that while at first blush Rule 20 appears to deal with the issue of employment of procurers, it in fact is directed at advertising the cost of prescription eyeglasses by persons not under the administrative control or supervision of the Board. The legislative enactment concerning the employment of procurers to obtain business cannot reasonably be given such a meaning. Therefore, the rule is unreasonable and discriminatory in its application and invalid.

■ We will now give further attention to Rule 19. As heretofore stated, it is definitive in nature and does not have any efficacy standing alone. The briefs contain very little discussion of it except insofar as it is incorporated into Rules 17 and 18. We consider it advisable, however, to suggest that there are at least two situations specified therein that are obviously unreasonable and invalid. The fact, standing alone, that a licensed optometrist may rent office space from another person would not be sufficient to reasonably support the presumption that they were "affiliated." And neither would the fact that such person "has agreed to pay said optometrist for the performance of optometric services" support a presumption that they were "affiliated." That provision is so broad that it would apply to a situation where "such person" had agreed to pay the optometrist for personal optometric services rendered to "such person" or members of his family. In the situation presented we will not determine the validity of the other three circumstances outlined in the rule.

For the reasons stated we rule as follows: The judgment of the trial court holding a portion of § 336.110 to be unconstitutional is reversed; that part of the judgment holding Rules 18 and 20 invalid is affirmed; that part of the judgment holding Rule 19 invalid is affirmed to the extent heretofore indicated and otherwise is reversed; that part of the judgment holding Rule 17 invalid is reversed on the ground that there is no justiciable controversy as to it; that part of the judgment restraining defendants and their agents from enforcing said rules is affirmed to the extent we have declared said rules invalid and otherwise is reversed. The case is remanded to the trial court for entry of a new judgment in conformity with the conclusions herein stated.

All concur.