Collman H. KETRING, Hugh Williamson and Mo-Ark Optical Company, a Corporation, Plaintiffs-Appellants,

v.

Robert STURGES, Ernest J. Tietjen, Jr., Russell C. Powell, John E. Scott and Angelo P. George, as Members of and Constituting and Acting as the Missouri State Board of Optometry, Defendants-Respondents.

No. 49924.

Supreme Court of Missouri, Division No. 1.

Nov. 11, 1963.

E. L. McClintock, Jr., Flat River, for appellants.

Thomas F. Eagleton, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, for respondents.

Albert E. Schoenbeck, St. Louis, for amicus curiae.

WELBORN, Commissioner.

This is an action for declaratory judgment respecting the validity of certain provisions of statutes regulating the practice of optometry in Missouri,[1] and rules promulgated by the Missouri State Board of Optometry.

Appellant Collman H. Ketring is a licensed and registered optometrist under the Missouri law. He is also the president and a stockholder of the Mo-Ark Optical Company, a Missouri corporation. Appellant Hugh Williamson, an optician, who is neither a licensed optometrist nor a licensed physician or surgeon, is an employee of Mo-Ark.

On March 20, 1962, a letter signed by Doctor Ketring as president of Mo-Ark, was circulated to Mo-Ark's customers who included, but were not limited to, optometrists and physicians and surgeons. In the letter, Mo-Ark announced its intention to enter the contact lens field. The letter requested customers to send Mo-Ark their refraction findings. Mo-Ark then would supply the lenses and, according to the letter, have Williamson insert the lenses in the patient's eyes and fit them to the patient's particular needs. The letter further stated that Williamson would make all modifications and adjustments in the lenses. It also stated that it would be helpful if measurements of the radius and proportions of the patient's cornea were sent with refraction findings, but, if the customer preferred, Williamson could make such measurements for the patient.

On March 23, 1962, Mo-Ark published an advertisement in the Poplar Bluff Daily American Republic, as follows:

"MO—ARK OPTICAL COMPANY
403 South Broadway, Poplar Bluff

Offers You:

Complete visual care by a state
registered optometrist.
Frames and lenses of the finest quality
Single vision lenses $15.00
Eyeglass repairs at lowest prices.
Reasonable terms.

MO–ARK OPTICAL COMPANY
DR. C. H. KETRING, O. D.
President
Phone SU 5–6611"

In the advertisement, the words "Mo-Ark Optical Company" in the first line were

---

1. Chapter 336, RSMo 1959, V.A.M.S. Unless otherwise indicated, chapter and section references herein are to this revision of the Revised Statutes of Missouri.

in print approximately twice the size of that in which Ketring's name appeared.

On March 30, 1962, the Missouri State Board of Optometry addressed a letter, signed by its president, respondent Robert G. Sturges, to Doctor Ketring. In its letter, the board expressed the position that Williamson, not being a registered optometrist or registered apprentice, was not, unless he was a physician or surgeon, permitted to examine and measure eyes or to fit, modify, adjust or insert contact lenses in Missouri. The letter called attention to board rules 8, 13 and 14, as follows:

"8. Every registered optometrist or registered apprentice whose name or office address or place of practice appears or is mentioned in any advertisement of any kind or character shall be presumed to have caused, allowed, permitted, approved and sanctioned such advertisement and shall be personally and professionally responsible for the content and character thereof until and unless he shall offer clear and convincing evidence that he did not cause, allow, permit, approve or sanction such advertisement."

"13. It shall be deemed 'dishonorable conduct in optometric practice' for an optometrist to permit, allow or cause a person, who is not a registered optometrist or a licensed physician or surgeon, to use said optometrist's prescription or optometric findings to fit contact lens upon a patient or member of the public."

"14. It shall be deemed 'dishonorable conduct in optometric practice' for an optometrist to enter into an agreement or arrangement whereby he permits, allows or causes a person, who is not a registered optometrist or a licensed physician or surgeon, to do any one or any combination of the following acts upon a patient or member of the public:

(1) examine the eye to ascertain the presence of defects or abnormal conditions of the eye;

(2) take an impression mold of the eyeball;

(3) determine the corrective qualities to be incorporated in a contact lens; or

(4) adjust or fit a contact lens to the eye."

The letter also called attention to Section 336.190(3), making the following act a misdemeanor:

"(3) Permitting any person in one's employ, supervision or control to practice optometry, unless that person has a certificate of registration as a registered optometrist."

The letter also, with reference to the newspaper advertisement, called attention to board rule 12, as follows:

"12. An optometrist shall be deemed to be advertising, practicing or attempting to practice under a name other than his own name if he permits, allows or causes any advertisement of eyeglasses or optometric services to be published that gives greater prominence in said advertisement to the name of a person, who is not a registered optometrist or physician or surgeon, than it gives to the individual name of the optometrist."

The board also referred to Section 336.-110, subd. 1 (6) and (7), which authorized the board to suspend or revoke the certificate of registration of an optometrist for:

"(6) Advertising, practicing or attempting to practice under a name other than one's own;

"(7) Advertising, directly or indirectly, prices or terms for optometric services."

The letter concluded with this paragraph:

"You are therefore notified that if you and the Mo-Ark Optical Company put into operation said plan to enter the contact lens field in the manner outlined

in your said circular letter, or if you and said corporation again publish an advertisement substantially in the form of the one enclosed herewith, or if said Company does engage in 'procuring' business for a registered optometrist, this Board shall take, and cause to be taken, all appropriate legal actions against the Mo-Ark Optical Company, you and any other optometrist involved."

On April 5, 1962, this action was instituted by appellants against the respondents, the individuals comprising the Missouri State Board of Optometry. Appellants sought a declaratory judgment that Sections 336.150 and 336.160 are unconstitutional because of their unlawful delegation of legislative power. They asked the court to declare rules 8, 12, 13 and 14 of the board invalid as beyond the scope of Chapter 336 and inconsistent therewith. In the alternative, they asked the court to declare that such rules and Sections 336.190 and 336.110, subd. 1(6), (7) and (8), are not applicable to and prohibitive of the proposed operation of the appellants.

The respondents, in their answer, asserted the validity of the statute and rules and their application to appellants' proposed operation. In addition, respondents asked the court for a declaration to the effect that anyone taking an impression of an eyeball for a contact lens, measuring the eye for a contact lens, determining the corrective qualities to be incorporated in such lens, inserting such lens in the eye, or adjusting or fitting the lens, must be a registered optometrist or a physician or surgeon licensed to practice in this State.

The case was tried on an agreed statement of facts, which, in addition to the foregoing matters, contained the following:

"It is not intended that any of the plaintiffs will fabricate the contact lenses to be furnished to the public. Before contact lenses may be fabricated by others, however, the size, shape and curvatures of the cornea of each eye of the patient must be measured by someone and such measurements given to the fabricator. Such measurements involve judgments on the part of the person making them inasmuch as mechanical tests for size and shape are not conclusive and inasmuch as in certain instances the curvatures of the lenses may vary from the curvatures of the cornea. It is intended that the plaintiff Hugh Williamson will make such measurements.

"In fitting contact lenses, the lenses are inserted into the eyes of the patient. Contact lenses must be minutely exact in order to function properly. An improperly fitted lens may produce trauma to the eye or an infection in the eye. The process of fitting and adjusting contact lenses is a time consuming process and may involve many visits by the patient to the person doing the fitting. When a lens does not fit properly, it must be modified either by the fabricator, upon instructions from the person fitting the lenses, or by that person himself. It is intended that the plaintiff Hugh Williamson will perform the acts set forth and described in this paragraph."

The circuit court entered a judgment holding Sections 336.150 and 336.160 constitutional and valid, holding rules 8, 12, 13 and 14 of the board constitutional and valid, and finding that such rules and Sections 336.110 and 336.190 are applicable to certain specified intended acts of respondent Ketring. The court also found that Sections 336.180 and 336.190 are applicable to and prohibitive of certain of the intended acts of Williamson and Mo-Ark. The court also entered the declaration prayed for by respondents regarding contact lenses.

After appellants' motion for rehearing was overruled, they appealed to this court.

■ By reason of the attack on the constitutionality of Sections 336.150 and 336.-160, we have jurisdiction of this appeal.

■ Section 336.150 sets out the general powers of the board of optometry. The portion which appellants attack is that which confers upon the board authority "to do all other things necessary to carry out the provisions of this chapter." This grant of authority is attacked as vague and indefinite, and thereby constituting an illegal delegation of legislative power in violation of Section 1 of Article III of the Constitution of Missouri, 1945, V.A.M.S., which vests the legislative power in the General Assembly. This attack is obviously not well founded. The provision in question is nothing more than a recital of authority which the board would possess, even in the absence of such provision. State ex inf. Wallach v. Schneider's Credit Jewelers, Mo.App., 243 S.W.2d 125, reversed on other grounds, Mo. 272 S.W.2d 289; State ex rel. Public Service Commission v. Padberg, 346 Mo. 1133, 145 S.W.2d 150, 151. Furthermore, appellants' attack is basically upon the regulatory power of the board and rules issued thereunder. No showing is made that the board is in any manner in this controversy relying upon its general powers under Section 336.150.

As for Section 336.160, that section reads, in part, as follows: "The state board of optometry may adopt reasonable rules and regulations within the scope and terms of this chapter for the proper administration and enforcement thereof." This provision is also attacked as an unlawful delegation of legislative power in violation of Section 1 of Article III. The complaint is that the provision is vague and indefinite in that it does not impose sufficient standards for the board's exercise of the rule-making power which it grants. In support of this attack, the appellants refer to the general rule, set out in 41 Am.Jur., Physicians and Surgeons, Section 19, p. 146, regarding the necessity for standards in the delegation by the legislature of the rule-making func-

tion. They then cite two cases claimed to support this contention that Section 336.-160 does not comply with the general requirement of standards. The cases are Abelson's v. State Board of Optometry, 5 N.J. 412, 75 A.2d 867, 22 A.L.R.2d 929, and Sage-Allen Co. v. Wheeler, 119 Conn. 667, 179 A. 195. Neither of these cases would support a finding of invalidity of the statute here challenged. In both cases, there were statutory provisions similar to Section 336.160. The New Jersey statute authorized the State Board of Optometry to make "such rules and regulations not inconsistent with the law, as may be necessary for the proper performance of its duties * * *." R.S. 45:12–4, N.J.S.A. The Connecticut act authorized the State Board of Examiners in Optometry to make such rules and regulations "not inconsistent with law" as might be necessary to govern the practice of optometry as a profession. Gen. St.Supp.1933, Section 792b. In neither of the cases was the attack upon such provision. Its validity was assumed. In the New Jersey case, the court did strike down as an invalid delegation of power a provision authorizing the board to revoke or suspend a license for "conduct which, in the opinion of the board, is of a character likely to deceive or defraud the public." However, as for the general grant of authority to issue regulations, the court stated:

"This is a grant of administrative power for the execution of the statutory policy; and its exercise is of necessity restrained by the declared policy and spirit of the statute and the criteria and standards therein laid down, for a grant not thus confined would constitute a delegation of essential legislative power in contravention of constitutional limitations." 75 A.2d 872.

In the Connecticut case, the court considered regulations which the board had promulgated to define "immoral, fraudulent, dishonorable or unprofessional conduct," as used in the statute. In upholding the authority to issue such regulations, the court

stated: "In furtherance of its general purpose and to carry out the details of its plan of regulation, the Legislature could properly vest the board with power to make regulations reasonably adapted to assure the competency of optometrists and to prevent conduct on their part which would tend to do harm to the public." 179 A. 200.

■ We have no doubt that the grant here involved is valid and not defective in the respects urged by appellants. The legislature clearly has the right to confer upon an administrative body the authority to issue rules and regulations for the administration and enforcement of a statute which it is the agency's duty to administer and enforce. Such a grant is in no respect an improper delegation of legislative power. Without detailing the numerous provisions of Chapter 336, its examination reveals well-defined legislative policy and standards to which the board's rules must conform. "Where * * * the legislature has established a sufficiently definite policy, standard, or rule, it may, without violating the rule prohibiting the delegation of legislative power, authorize an administrative officer or body to adopt and enforce rules, regulations, or orders relating to the administration or enforcement of the law, to carry out the purpose of the legislature as expressed by it." 73 C.J.S. Public Administrative Bodies and Procedure § 32, p. 331; Borden Company v. Thomason, Mo.Sup., 353 S.W.2d 735, 751. See Rust v. Missouri Dental Board, 348 Mo. 616, 155 S.W.2d 80, 85.

Appellants attack rule 8, above quoted, as being beyond the scope of the board's regulatory powers. They state that subparagraphs (5), (6) and (7) of Section 336.110, subd. 1 express the position of the legislature with regard to advertising and that this rule attempts to exercise legislative power by declaring that a person accused of improper advertising by the board is guilty until he proves himself innocent. Of course, all that the rule attempts to do is to establish a rebuttable presumption of re-

sponsibility for advertising. See Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376, 380; 73 C.J.S. Public Administrative Bodies and Procedure, § 124, p. 444. In any event, Ketring, being the only registered optometrist among the appellants, is the only one of them affected by this rule. He signed the letter of March 20, so that such presumption would not be unreasonable as to it, with or without the rule. As for the newspaper advertisement, the stipulation of facts recites that Ketring knew in advance of its publication and directed and approved of such publication. Thus, it would be unnecessary to invoke the rule with respect to that advertisement. No allegation is made concerning plans for future advertisements and in such circumstances we see no need to speculate upon the validity and effect of the rule in other factual situations.

As for rule 12, appellants argue that it is an enlargement of Section 336.110, subd. 1(6), which could be made only by the legislature itself. They assert that the rule creates a new offense and bears no reasonable relation to the legislative prohibition. The rule does not, on its face, purport to prohibit activity not proscribed by the legislature. It attempts to describe some activity which will be considered within the legislative prohibition, found in Section 336.110, subd. 1(6), authorizing suspension or revocation of the license of an optometrist for "[a]dvertising, practicing or attempting to practice under a name other than one's own." As such, it is an "interpretative regulation." "The law is embodied in the statute, * * *." 1 Davis, Administrative Law Treatise, Section 5.05, p. 315.

Respondents and amicus curiae, the Missouri Optometric Association, assert that the rule is designed to prevent the practice of optometry by unlicensed persons or corporations. Respondents assert: "Advertisements designed to persuade the public to use a particular optometrist should be so worded that the public is made aware of the name and qualifications of such optometrist. Advertising that gives greater prom-

inence to an assistant who may not be licensed or a corporation which may not practice is misleading to the public." Amicus curiae states: "Publishing an advertisement in which the name of an unregistered layman or corporation is printed in type many times the size of the type in which the name of the registered optometrist is printed is but a devious and sly means of permitting the optometrist to practice under a name other than his own."

In the case of Golding v. Schubach Optical Co., 93 Utah 32, 70 P.2d 871, 1. c. 875, the court described the object of a statutory provision such as that here involved as follows: "Subdivision (6) of the section setting forth what constitutes 'unprofessional conduct' reads: 'Advertising, practicing or attempting to practice under a name other than his own.' This, of course, means masquerading under another name, using the name of another person instead of one's own, concealing one's real identity, taking one's license under a false or assumed name; (thereby perhaps concealing matters which would prevent one getting a license) and kindred deceits and false parading." See also Berger v. Board of Examiners in Optometry, 74 R.I. 165, 59 A.2d 717. No case has been cited by the proponents of the rule in which any court has held that an advertisement of the sort that the rule would prohibit constitutes advertising under a name other than one's own. On the other hand, the rule clearly contemplates that the name of the optometrist will appear in the advertisement, so his identity will not be concealed or unknown. In such circumstances, the licensed optometrist could hardly be said to be masquerading under another name, using the name of another instead of his own or concealing his real identity. Furthermore, this rule places the major emphasis on the com-

parative prominence given the name of the optometrist and of the unregistered person. If they are given equal prominence, no fraud on the public is practiced. If the name of the optometrist appears less prominently than the name of the unlicensed individual, the public is defrauded. We believe that the legislative enactment cannot properly be given such a meaning, and the rule is, therefore, invalid.

We would note, in this connection, that the Missouri General Assembly has not gone to the lengths that the legislatures of other states have gone in prohibiting or regulating advertising by optometrists. See Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563; Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S.Ct. 1750, 10 L.Ed.2d 983. Nor are the statutory limitations on advertising by optometrists as broad as those applied to dentists (Section 332.160) and considered in Rust v. Missouri Dental Board, 348 Mo. 616, 155 S.W.2d 80, relied upon by respondents.

Nor has the Missouri Legislature expressly prohibited a licensed optometrist from being employed by an unlicensed person or corporation. See State ex inf. Mc-Kittrick v. Gate City Optical Co., 339 Mo. 427, 97 S.W.2d 89;[2] Bennett v. Indiana State Board of R. & E. in Optometry, 211 Ind. 678, 7 N.E.2d 977; Kay Jewelry Co. v. Board of Registration in Optometry, 305 Mass. 581, 27 N.E.2d 1; Neill v. Gimbel Bros., 330 Pa. 213, 199 A. 178; Michell v. Louisiana State Board of Optometry Examiners (La.App.,), 146 So.2d 863. Extension of limitations in such regard is a matter for the legislature and may not be achieved by administrative rule beyond the scope of our present statutes.

Rules 13 and 14 define "dishonorable conduct in optometric practice" as em-

---

2. Inasmuch as the reliance here is solely upon the advertisement to show that Ketring was practicing under a name other than his own, we need not consider what effect, if any, the amendment subsequent to the Gate City case of subsec-

tion (2) of Section 336.120 in 1947 (Laws of Mo., 1947, Vol. 1, p. 414) by the insertion of the words "not engaged in the practice of optometry" might have on the conclusion reached in the Gate City case.

ployed in Section 336.110, subd. 1(8), authorizing the board to suspend or revoke a license on such grounds. In a sense, these are interpretative rules. However, in view of the legislature's failure fully to define the term and in view of the authority conferred upon the board, these rules assume a legislative character. Quite clearly, the legislature could confer upon the board the authority to revoke a license for "dishonorable conduct" without specifying every act which should constitute dishonorable conduct, and leave it to the board to determine in a particular case what amounts to dishonorable conduct. State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 65 S.W.2d 943, 949. In view of the regulatory authority conferred upon the board, they could, as they saw fit, define in advance some conduct which they would consider dishonorable. The board's judgment in such matters should be disturbed only if the rule is unreasonable. 1 Davis, Administrative Law Treatise, Section 5.05, p. 315; King v. Priest, 357 Mo. 68, 206 S.W.2d 547. Further, greater deference should be paid the board's determination because they, being members of the profession, are more aware of the standards of conduct which the profession exacts of its members, and thus are in a better condition to judge what is dishonorable conduct in the practice of an optometrist. Rust v. Missouri Dental Board, 348 Mo. 616, 155 S.W.2d 80, 85.

As for the rule in question, Section 336.-190 makes the practice of optometry without a license a misdemeanor. Certainly, aiding and abetting such practice could properly be considered dishonorable conduct in optometric practice. We then must look at the prohibited activities in order to determine whether or not they constitute the practice of optometry. Essentially, the prohibited activity is assisting or employing unlicensed persons in handling contact lenses. Inasmuch as the matters are a subject of the trial court's declaration which appellants allege to be erroneous, we will consider that declaration.

Section 336.010 defines the practice of optometry as follows:

"(1) The examination of the human eye, without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms or ocular exercises.

"(2) The employment of objective or subjective mechanical means to determine the accommodative or refractive states of the human eye or the range of power of vision of the human eye.

"(3) The prescription or adaptation without the use of drugs, medicines or surgery, of lenses, prisms, or ocular exercises to correct defects or abnormal conditions of the human eye or to adjust the human eye to the conditions of special occupation. * * *"

The factual submission here relates solely to measurement of the eyeball for contact lenses and their fitting and adjustment. We will confine our consideration of the rules to the provisions which cover those aspects of the practice.

Appellants contend that the rules are invalid because measurement of the eyeball and fitting of contact lenses are purely mechanical functions, exempt from the scope of the practice of optometry under Chapter 336 by Section 336.120(2), which exempts: "Persons, firms and corporations, not engaged in the practice of optometry, who sell eyeglasses or spectacles in a store, shop or other permanently established place of business on prescription from persons authorized under the laws of this state to practice either optometry or medicine and surgery."

One difficulty with appellants' position that these functions are purely mechanical arises from the agreed statement of facts in the case. As above set out, appellants have agreed that the measurement of the cornea for contact lenses is not a purely

mechanical function. They agree that it also involves the exercise of judgment. Likewise, the stipulation regarding the problems and factors involved in the fitting and adjustment of contact lenses shows that these procedures are not purely mechanical.

An Oregon statute (O.R.S., Section 683.-010(2)) defines the practice of optometry as the "employment of any means other than the use of drugs for the measurement or assistance of the powers or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof." In the case of State ex rel. Reed v. Kuzirian, 228 Or. 619, 365 P.2d 1046, 88 A.L.R.2d 1284, the Oregon Supreme Court held that a person who inserts, fits and adjusts contact lenses into the eye of any person was engaged in the practice of optometry within the meaning of the Oregon law. The contention of the defendant in that case was similar to that of appellants here.

In reaching this conclusion, the court stated: "Above all, however, it is clear from the evidence without any reasonable doubt, that the fitting of the lenses required some degree of professional skill and judgment." The court further stated: "There was other testimony which established that the mechanical tests for size and shape were not conclusive and that the peculiar nature of the lens and shape of each individual's eye required professional judgment as well as mechanical exactness." 365 P.2d 1049. The stipulation of facts on which this case was submitted clearly supports the same conclusion regarding the nature of the acts in question as that reached by the Oregon court.

A result contrary to that reached by the Oregon court was reached in High v. Ridgeway's Opticians, 258 N.C. 626, 129 S.E.2d 301. In that case, the court concluded that North Carolina statutes licensing both optometrists and opticians were broad enough to permit an optometrist to fit contact lenses and also authorized a dispensing optician to do so upon prescription of a physician, oculist or optometrist. The plaintiff, in the High case, relied upon the Oregon case above cited. However, the North Carolina court concluded that the North Carolina statutes were different from the Oregon act in regard to what opticians may or may not do. The court stated:

"It appears that the Supreme Court of Oregon is the only appellate court of last resort in the several states that has heretofore passed on the question presented on this appeal. Even so, the difference in the statutory provisions in Orgeon and those in this State with respect to opticians and what they may and may not do are substantially different. In our opinion, so long as the dispensing optician fabricates, fits and inserts contact lenses in the eyes in accordance with the prescriptions of examining physicians or oculists, and requires the patient to return to the examining physician or oculist in order that the writer of the prescription may determine whether or not the prescription has been properly filled and the contact lenses properly measured, fabricated and fitted, such optician is not engaged in the practice of optometry within the meaning of the statute." 129 S.E.2d 305.

Appellants here also cite Commonwealth v. Stemet, 21 Pa.Dist.&Co.R.2d 295 (Pa.). In that case, the trial court, in a criminal proceeding charging the practicing of optometry without a license, concluded that "defendants by measuring the curvature of the eye in order to grind contact lenses" had not violated the statute. Construing the statute strictly because of the criminal nature of the action, the court held that the legislature "intended only to regulate the examination of the eyes for the purpose of ascertaining defects of vision correctable by the application of lenses and not the making of lenses to conform to existing prescriptions. The latter, being a

purely mechanical function, constitutes the business of the optician and is not a professional function." 21 Dist.&Co.R.2d 297.

In view of the agreed statement of facts in this case, and in the absence of any statute that would authorize opticians to measure the eyeball or to insert and adjust contact lenses, we are of the opinion that the trial court properly found that the performance of such functions does constitute the practice of optometry under the laws of this state.

■ Having reached this conclusion, we likewise conclude that rules 13 and 14, insofar as they relate to such matters, do define as dishonorable conduct assistance in activities which would constitute the practice of optometry by an unlicensed person. As such the regulations are reasonable and within the authority of the board.

■ In their petition and in their points and authorities in their brief in this court, appellants assert that rules 13 and 14, if otherwise valid, have the effect of granting to registered optometrists exclusive rights and privileges to perform certain mechanical functions, "in direct violation of Article III, Section 40(28) of the Constitution of Missouri." This assertion is coupled with their attack on the invalidity of the four questioned rules as beyond the board's powers. No authority is cited on the constitutional objection and the matter is not argued or otherwise developed in the brief. In such circumstances, the objection must be deemed to have been abandoned. Lansford v. Southwest Lime Co., Mo.Sup., 266 S.W.2d 564, 565. Furthermore, we have previously concluded that the questioned functions are not purely mechanical.

In addition to its adjudication with respect to the validity of Sections 336.150 and 336.160, RSMo, and rules 8, 12, 13 and 14, the court entered the following judgment:

"3. Sections 336.110 and 336.190, Revised Statutes of Missouri, 1959, and Rules 8, 12, 13 and 14 are applicable

to and prohibitive of the acts and intended acts of the plaintiff Collman H. Ketring in:

"(a) causing the publication of an advertisement of eye glasses and optometric services that gave greater prominence to the name of a person, who is not a registered optometrist or a licensed physician or surgeon, than it gave to his own name;

"(b) causing the publication of an advertisement, directly or indirectly, advertising prices and terms for optometric services;

"(c) engaging in dishonorable conduct in optometric practice by soliciting optometric practice for a layman by means of a circular letter and a newspaper advertisement; and

"(d) intending to engage in dishonorable conduct in optometric practice by permitting a layman, under his control as an employee of the corporation of which he is president, to practice optometry without a certificate of registration as a registered optometrist."

As to subparagraph (a), we have previously concluded that rule 12, which is the basis for this adjudication, is beyond the scope of the board's regulatory power.

■ As for subparagraph (b), the advertisement in question included this language: "Single vision lenses $15.00. Eyeglass repairs at lowest prices. Reasonable terms." No other reference to prices or terms appears. Section 336.110, subd. 1(7) does limit the right of an optometrist to advertise "directly or indirectly, prices or terms for optometric *services.*" The advertisement in question refers to the price of lenses and for repair of eyeglasses. Clearly, under Section 336.120(2) and (3), these are not optometric services. As above pointed out, Missouri has not limited advertising of the price of eyeglasses as have some states. In such circumstances, we find no basis for this declaration.

The pleadings do not disclose that either party sought a declaration on the matter to which subparagraph (c) is directed. There is no indication that the board took the position that the circulation of the letter and the newspaper advertisement constituted "dishonorable conduct" in the practice of optometry on the basis herein specified.

As to subparagraph (d), we have heretofore indicated the proposed operation involving Williamson and Mo-Ark would, at least insofar as the planned activities of Williamson are concerned, involve Williamson's practice of optometry without a license. Of course, merely planning or intending to enter into such an operation would not constitute a violation of the statutes or rules by Ketring. Furthermore, the statute and rules speak of the non-licensed person's being under the "control" of the licensed individual. Ketring is president of Mo-Ark. However, there is nothing in the record here to indicate the extent of his control over Williamson. We would not presume control of Williamson by Ketring. See Sections 351.310 and 351.-360, subd. 2, V.A.M.S.

Furthermore, as to the declaration that Rule 13 is applicable to the proposed acts of Ketring, there is no factual basis for such declaration. Rule 13 defines as unprofessional conduct an optometrist's permitting his optometric findings to be used by an unlicensed person in the fitting of contact lenses. There is nothing in the record to show that Ketring proposed to do this. The letter of Mo-Ark did call upon the customers of the company to furnish their findings in order to aid Williamson, but no reference is made to Ketring's doing so. Therefore, this declaration would not be authorized.

3. In State ex rel. Reed v. Kuzirian, supra, the Oregon court concluded that the evidence showed that the optician "may have had a proper function to fulfill when he assisted the doctor in fitting contact lenses within the actual personal supervision of the professional person."

We are also of the opinion that any declaration as to the handling of contact lenses constituting the practice of optometry should be limited to the matters in issue between the parties to this action. Any further definition might well involve factual considerations not here presented and no attempt should be made to pass upon them.[3]

As above indicated, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court with directions to modify the judgment consistently with the views herein expressed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.

Therefore, the injunction issued contained an exception in instances when the defendant was "acting under direct personal supervision of legally qualified personnel." 365 P.2d 1050. No issue in this regard has been presented in this case.