FOREMOST–McKESSON, INC., a corpora-
tion, et al., Appellants,

v.

Dexter D. DAVIS, Commissioner of Agricul-
ture of Missouri, and John C. Danforth,
Attorney General of Missouri, Respondents,

and

Bailey Farms, Inc., et al., Intervenors.

No. 57909.

Supreme Court of Missouri,
En Banc.

Dec. 21, 1972.

Cullen Coil, Carson, Inglish, Monaco & Coil, Jefferson City, and Dick H. Woods, Lawrence M. Berkowitz, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for Foremost-McKesson, Inc. and Hawthorn-Mellody, Inc.

John J. Kitchin, Swanson, Midgley, Jones, Eager, Gangwere & Thurlo, Kansas City, for Fairmont Foods Co.

Martin J. Purcell, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for Kraftco Corp.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for defendants-respondents.

Veryl L. Riddle, Thomas C. Walsh, St. Louis, for intervenors-respondents.

Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel, for respondents.

SEILER, Justice.

This is a declaratory judgment and injunctive relief action brought by four milk processors and distributors. The circuit court denied relief, and plaintiffs appeal, maintaining that certain of the rules and regulations promulgated by the commissioner of agriculture under the Unfair Milk Practices Act, Sec. 416.410–416.560,[1] are unlawful and void and plaintiffs are entitled to a permanent injunction against their enforcement. Appellants further contend that the act and the rules and regulations are unconstitutional as special legislation contrary to Art. III, Sec. 40(30), Mo. Const.1945, V.A.M.S.

1. All references to statutes are to R.S.Mo. 1969, V.A.M.S.

Appellants base jurisdiction on the constitutional construction portion of Art. V, Sec. 3, Mo.Const.1945. Respondents deny there are any substantial constitutional questions presented, but maintain we have jurisdiction under rule 83.06, V.A.M.R., because of the importance of the case and the desirability of a swift adjudication.

The trial court, after an evidentiary hearing, made extensive findings of fact and conclusions of law and found, contrary to appellants' theory, that the rules are a proper utilization of the authority granted the commissioner to implement the legislative purpose. We affirm.

The rules challenged in this suit were scheduled to go into effect June 22, 1970, but their enforcement has been delayed pending the outcome of the litigation. Originally it appeared the appeal would involve constitutional construction, but after study of the record and briefs, we conclude, as stated later herein, that the constitutional questions were settled by this court in an earlier case, yet we have determined, by reason of the general interest and importance of the other questions in the case and need for adjudication at this level, that we will retain and decide the case, rather than go through the time-consuming procedure of sending the case to the Court of Appeals and then transferring it back prior to opinion.

A summary of the challenged rules follows:

Rules 1.02, 1.08, and 1.09 are definitional rules, respectively, of "distributor", "discount", and "dock cost for fluid milk".

Rule 2.04 prohibits price differentials between private label and regular brand label milk of like grade and quality except when such differences are cost-justified.

Rule 2.05 prohibits all discounts except a 2% or less discount for payment on or before a certain date, which discount must be available to all customers under identical terms and conditions.

Rule 2.06 requires the filing by processors and distributors of their current prices and requires them to file any changes in these prices within 48 hours after they become effective. Sales below currently filed prices are permitted only to make a good faith effort to meet competition or where cost-justified by a cost savings under rule 2.07. A lower competitive price may be met on the spot, but the commissioner must be given notification of the competitor offering the lower price, the name and address of the person receiving it, the dates on which it is granted, and the amount of the lower price in order that the commissioner can determine good faith and whether the act was violated by the competitor.

Rule 2.07 authorizes cost-justified differentials and requires notification to the commissioner of the differentials and provides for a hearing if the commissioner determines that they are not in fact cost justified.

Rule 2.08 prohibits sales below "dock cost" as defined in rule 1.09 and such sales are prima facie evidence of a violation of Sec 416.415.

Rule 2.10 prohibits loans to retailers and the renting or leasing of equipment at less than the supplier's cost. Loans to retailers are prima facie violations of Sec. 416.440.

Rule 2.11 requires the keeping of cost records which must be made available to the commissioner. Any accepted cost accounting method may be used to compute cost.

Rule 2.12 provides for unit price information to be given to purchasers either on the delivery tickets or by weekly summaries.

Rule 4.01 authorizes the commissioner to make such investigations as he deems necessary to enforce the act.

Appellants' evidence consisted of testimony by representatives of the four corporations, an expert in agricultural economics, the final report of the Joint Committee on Milk Producers and Distributors,

January 1959, to the 70th General Assembly, and certain exhibits such as price lists. The company representatives testified to company business practices and operations, any cost studies which have been done, the factors to be considered in finding cost and establishing volume pricing and central billing differentials, and the trend toward private labelling. The expert witness went into greater detail on an industry wide scale. Respondents' evidence consisted of testimony by a department of agriculture inspector regarding the problems encountered in enforcing the act and the need for the rules and regulations. A certified public accountant also testified regarding billing practices, cost studies, and central billing. Respondents also introduced into evidence the public hearing held October 28, 1968 by the commissioner on the proposed rules, and certain interrogatories answered by appellants. Where a more detailed account of the evidence is necessary it is included in the text of the opinion.

Appellants attempted to show by their evidence that the rules and regulations did not reasonably relate to the act, would be an undue burden on them by requiring information which they did not maintain, and were unclear, ambiguous, and not comprehensible. Respondents' evidence and the evidence they elicited in cross-examination tended to show that appellants knew what the rules meant, and required, that they had much of the basic information needed to comply with the rules and the rest could be obtained from their present cost studies and accounting procedures without excessive added expense or inconvenience, and that the rules reasonably related to the purposes of the act.

Appellants assert some 18 points of error, which in hope of keeping this opinion within manageable lengths, we have consolidated into eight grounds of attack to be discussed below.

The purposes and objectives of the act were fully and adequately explained in Borden Company v. Thomason (Mo.Sup.

banc), 353 S.W.2d 735 and it is not necessary to reiterate them here. The act is not self-enforcing and the commissioner of agriculture is authorized and directed to promulgate rules and regulations to carry out the purposes of the act, Sec. 416.460. In the last ten years, the number of milk processors has declined by at least 50%. Virtually every state has imposed some type of restrictions on the dairy industry to insure an adequate supply of milk for their citizens at a fair price determined by wholesome and fair competition. These facts combined with the purpose of the act demonstrate the need for close scrutiny and meaningful supervision of dairy practices.

Appellants in seeking to overturn administrative rules and regulations bear a heavy burden, as we said in King v. Priest (banc), 357 Mo. 68, 206 S.W.2d 547, 552: "In view of the broad authority granted respondents by statute, supra, and the admitted adoption of the rule pursuant thereto, the rule must be regarded as prima facie reasonable . . . The burden rested upon appellants to plead facts to show the invalidity of the rule . . . Only in a clear case will the courts interfere on the ground of unreasonableness . . ."

Rules and regulations are to be sustained unless unreasonable and plainly inconsistent with the act, and they are not to be overruled except for weighty reasons. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; King v. Priest, supra. The burden is upon those challenging the rules to show that they bear no reasonable relationship to the legislative objective. King v. Priest, supra; Ketring v. Sturges (Mo.Sup.), 372 S.W.2d 104. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. Federal Trade Commission v. Mandel Brothers, Inc., 359 U.S. 385, 391, 79 S.Ct. 818, 3 L.Ed.2d 893; Ketring v. Sturges, supra; State ex rel. Curators v. Neill (Mo.Sup.), 397 S.W. 2d 666, 670. Administrative rules should be reviewed in light of the evil they seek

to cure and are not unreasonable merely because they are burdensome. Borden Company v. Thomason, supra.

■ Appellants first contend that rules 2.06, 2.07, 2.08, and 2.11 constitute "remedies" not provided in the act, and are contrary to Sec. 416.480, which provides: "The remedies provided for in sections 416.410 to 416.560 are exclusive and no criminal fines or penalties shall be imposed for violation of sections 416.410 to 416.560." Appellants argue that the above rules have a common thread among them which misconceives the purpose of the act and renders the rules illegal and void.

Appellants support this contention with State ex rel. Thomason v. Roth (Mo.Sup.), 372 S.W.2d 94 where it was held that inasmuch as the statute declared that the remedies provided therein were exclusive, and one such remedy was for the commissioner to seek injunctive relief when a written complaint was made to him, the commissioner could not proceed in the absence of a written complaint. However, Sec. 416.450 has since been amended (Laws 1963, p. 643, Sec. 1) and now gives the commissioner the additional power to investigate violations which are *apparent* to him.

The challenged rules enable the commissioner to implement, not expand, the remedies afforded him by the act and enable him to obtain information necessary for enforcement of the act. Respondents' evidence indicates a lack of cooperation encountered by the commissioner in his attempts to enforce the act and his inability to obtain information necessary to determine cost.[2] The only way a violation could be apparent to the commissioner is to give him the means necessary to gain cost information. Otherwise the 1963 amendment to Sec. 416.450 would be meaningless. The remedies available under Sec. 416.450 are injunctions and under Sec. 416.490 suspension or revocation of licenses; these are the only remedies which the commissioner is trying to enforce. The statute specifically provides that no criminal penalties are at stake. The rules do reasonably relate to the commissioner's powers to investigate under the act. Appellants' contention that the commissioner has no power to obtain information from the dairy industry would result in total emasculation of the act and would avoid any effective regulation whatsoever. Appellants' contention is overruled.

Second, appellants contend that rules 1.09 and 2.08 interfere or may tend to interfere with volume pricing contrary to the injunction issued in Foremost Dairies, Inc. v. Thomason (Mo.Sup.banc), 384 S.W.2d 651, 661 against what was then rule 10, which the court struck down because it could result in an "artificial cost figure" which might be higher than a cost-justified volume

2. Note the following findings by the trial court, supported by the evidence:

"6. In his administration of the Act, it is often apparent to the Commissioner, or his staff, that violations of the Act are occurring; but the Commissioner's investigations of such violations are frequently frustrated by his inability to obtain accurate cost and price information. Such information has, in the past, been difficult, if not impossible, to obtain.

"7. The Commissioner, in attempting to enforce the Act, often encounters complaints of violations but is frequently unable to ascertain whether a particular price reduction to a given purchaser is in fact made in good faith to meet competition or is rather a predatory practice with the effect of unfairly diverting trade from a competitor or of otherwise injuring a competitor or of destroying competition.

"8. Processors and distributors, in investigating an alleged lower price offer to a customer, conduct a rather thorough investigation and find many such claims to be fabrications. Without regulations such as those under attack here, the Commissioner has considerable difficulty in determining whether complaints about certain 'discounts' have any basis and whether such 'discounts' are justified by a cost savings or by legitimate competition. In the case of price cutting and price wars, the Commissioner presently has no feasible way of identifying the initiator of such predatory price cuts.

"13. The Rules in question would immeasurably assist the Commissioner in carrying out the purposes of the Act."

pricing system based on actual cost of delivery. Along with this appellants contend that rules 2.06 and 2.07, which require the processors and distributors to justify their volume pricing systems, are in direct conflict with the court's injunction in the Foremost case because their actions must be presumed lawful until the commissioner fulfills his burden of showing a violation and placing the expense of coming forward with cost-justification on appellants is totally inconsistent with the injunction.

 This contention is overruled. All rule 1.09 does is create a rebuttable presumption, Ketring v. Sturges, supra, and, as discussed later herein, the evidence supports the trial court's finding that the average cost of processing raw milk is in fact as stated in the rule. Rule 2.08 merely provides that any sale below cost is a prima facie violation of Sec. 416.415 and is consistent with the act. The cost factors involved in putting milk in the processor's dock are necessarily inherent in every sale and can thus logically be used by the commissioner as a base to determine a minimal cost below which any sale would be forbidden unless cost-justified, in which case the lesser cost will be accepted. State ex rel. Thomason v. Adams Dairy Company (Mo. Sup.), 379 S.W.2d 553, 555 said: "The provision in paragraph 2 that proof of giving milk is *prima facie* evidence of a violation of the section is a rule of evidence which may affect the burden of evidence but does not affect or change the burden of proof. In this case the burden of proof, including the risk of nonpersuasion, remained throughout on the commissioner who charged that respondent violated the provisions of the section of the law in question

. . . " And rules 2.06 and 2.07 provide a means by which appellants can show different costs, which was the missing element in old rule 10 in the Foremost Dairies case.[3]

 Appellants' third contention is that rules 1.09 and 2.12 are arbitrary, capricious, and unreasonable. The testimony established that there was a range of costs for producing a quart, half gallon, or gallon of milk, that these costs depended on many circumstances and that the costs per plant depended on capacity, production in relation to capacity, labor costs, and a number of other factors. Appellants rely on Ketring v. Sturges, supra, for the contention that administrative presumptions must be reasonable, not only rebuttable. We agree with the trial court's findings:

"9. The presumed processing costs in Rule 1.09 of $.04 per quart, $.08 per half gallon and $.16 per gallon accurately reflect the average cost of processing raw milk in Missouri, and are not arbitrary or without foundation. These costs were discussed by the Commissioner with the industry in 1967 and 1968, and no member of the industry raised any objection thereto.

"14. The processing costs of $.04 per quart, $.08 per half gallon and $.16 per gallon contained in Rule 1.09 are not unreasonable. All this rule attempts to do is to establish a rebuttable presumption of processing costs. Ketring v. Sturges, supra. Any processor who contends his costs are different from the presumed costs can file such costs with the Commissioner and, if the Commissioner's examination reveals such costs to exist in fact, those costs will be accepted.

3. Again, note the findings of the trial court in this area:
"8. Rules 1.09, 2.06, 2.07, 2.11, 2.12, 3.02 and 4.01 are reasonable in that they enable the Commissioner to ascertain 'cost' below which products may not be sold under the Act, and to determine the actual price at which they are in fact being sold. They also enable the Commissioner to determine whether certain sales of milk products are made in good

faith or with the intent of unfairly diverting trade, as prescribed by the Act.
"13. Rules 1.09 and 2.08 are unambiguous and consistent with the statute. These rules do not proport [sic] to prohibit any cost justified pricing policy, including volume discounts and central billing. These rules are not in violation of the injunction in Foremost v. Thomason, [Mo.], 384 S.W.2d 651 (En Banc 1964.)"

"15. The fact that costs may not be exactly the same for all processors does not invalidate the presumption of Rule 1.09, for the evidence establishes that the presumed costs have a very real basis in fact and are not the product of whim or caprice. In addition, any processor who can establish that his costs are different is afforded an opportunity to rebut the presumption."

The testimony further showed that the presumed costs were within the range of costs for different plants. Exact costs are difficult to establish as the court realized in Borden Company v. Thomason, supra, 353 S.W.2d at 750: " . . . Clearly average costs may be used in determining the cost of any product controlled by the statute." Furthermore, rule 2.08 provides a complete safeguard and defense for those whose costs vary from the presumed costs by allowing them to show these variances. Appellants have failed to sustain their burden of unreasonableness.

Appellants also contend that rule 2.12 bears no reasonable relationship to the purposes or policies of the act and would be unduly burdensome to appellants. As noted in American Telephone & Telegraph Company v. United States, 299 U.S. 232, 236, 57 S.Ct. 170, 172, 81 L.Ed. 142: "This court is not at liberty to substitute its own discretion for . . . administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action here involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse . . ." The rules and regulations in question must be so at odds with fundamental principles as to

be mere whim or caprice. Appellants have failed to show abuse or excessive burdensomeness and therefore we must hold the rule reasonable on its face. The evidence is that appellants have complied with similar regulations in other states and the benefits to the public and the industry in general outweigh any burden of inconvenience to appellants. The contention is overruled.

Fourth, appellants contend that rules 1.08, 2.05, 2.06, and 2.07 are in conflict with the act in that they prohibit pricing practices lawful under the act. Clearly, Foremost Dairies, Inc. v. Thomason, supra, allows cost-justified volume price differentials and we find nothing in the rules which violates the injunction, spirit, or intent of that case.[4] Appellants also contend that the rules prohibit "central billing discounts" which should be allowable under the rationale of Foremost Dairies, Inc., supra. We agree that the rationale of the Foremost case is broad enough to include cost-justified central billing differentials. This is consistent with the trial court's decision and we do not see where appellants have shown that the rules are meant to, or will, deny them passing any cost-justified savings on to their central billing customers. All rules 2.06 and 2.07 provide on their face is a comprehensive regulatory scheme whereby the commissioner can identify and isolate unjustified and predatory discounts. Appellants' contention is overruled.

Appellants' fifth attack is that rules 2.04, 2.05, 2.06, 2.08, and 2.10 are invalid to the extent they do not include the statutory requisite of intent or effect to unfairly divert trade or injure competition in their prohibitions. This contention is without merit. The commissioner's rules are

4. Again we note the perceptive finding of the trial court in this regard:

"17. Rules 1.08, 2.05, 2.06 and 2.07 make all discounts, other than a mere 2% time-payment concession, prima facie violations of the Act because they are arbitrary and predatory, unless cost jus-

tified or made in a good faith effort to meet comptition. These rules do not prohibit any cost justified price reduction or any price reduction compelled by competition. These rules are not ambiguous or inconsistent with the statute or the holding of Foremost v. Thomason, supra."

aids to assist him in enforcing the act. The rules define and identify those activities which the commissioner, as the administrative officer charged with enforcing the act, in the exercise of his judgment, believes are the types of activities prohibited by the act. It is a well-established principle that administrative rules, which were promulgated to implement the act, must be read in conjunction and harmony therewith and, so read, the rules do not eliminate any statutory requisite of intent or effect.

■ Sixth, appellants contend that rules 1.08, 1.09, 2.05, 2.06, 2.07, 2.08, and 2.11 are vague, ambiguous, and conflicting with the act; that rules 1.08 and 2.05 confuse each other and destroy any sense each makes alone. Merely because there is some redundancy in the language of the two rules does not justify finding them vague and ambiguous. Rule 1.08 is the general definitional rule of "discount" and rule 2.05 applies rule 1.08 to processors and distributors.

■ Rule 2.06 and 2.07 are claimed to be void for vagueness since appellants do not know what "prices" to file with the commissioner. They further contend that all customers have volume prices available but the commissioner wants the names and addresses of "each recipient" of a volume price differential and it is impossible to respond to the rules. Rule 2.06 requires all processors and distributors to file their current prices, which are kept confidential pursuant to rule 2.09. Rule 2.07 recognizes that price reductions, identified as "volume price differentials" are often justified by cost savings and allows the granting of such differentials to specific customers when the cost savings is established. We do not believe it can be said these rules are void for vagueness.

■ Likewise, rules 1.09 and 2.08 as to "dock cost" seem prima facie reasonable. In our opinion, it seems clear that "dock cost" merely involves a computation of

cost as provided for in the statute up to the point of placing the milk on the dock and thus provides a better reference point for the commissioner to begin his investigations.

■ Reasonableness and good faith are the keystones of the rules and the act, Borden Company v. Thomason, supra, and, so considered, rule 2.11 on cost records is reasonable on its face.

We do not know, of course, how these rules will work in practice, but attempts to impute arbitrariness or unfairness to the commissioner are premature at this stage when the rules have never been in force. With respect to appellants' contention now under consideration, the fact is that prima facie the rules are reasonable.

Appellants' seventh contention is that rules 1.02, 1.09, 2.04, 2.06, 2.07, 2.08, and 4.01 are beyond the scope of the commissioner's power.

■ Appellants contend rule 1.02 expands the definition of "distributor" in Sec. 416.410. We see no inconsistency in the statute and the rule. Rule 1.02 merely indicates what factors "will be considered" by the commissioner to see if the statutory requirements are fulfilled. It is directed at segregating true distributors from mere agents and is within the commissioner's power.

■ Rule 2.04 is attacked as being outside the scope of the commissioner's rule making power because the statute says nothing about private label versus regular label milk prices. Appellants recite studies which indicate that private labelling is a growing phenomenon, that private processors resisted the onset of private label marketing, and that private label marketing is neither predatory nor arbitrary. The evidence shows that where no competition exists private and brand label milk are sold at the same price. The evidence also shows that there *may* be some cost savings associated with private labelling. Nothing in

rule 2.04 prohibits cost-justified price differentials. Private labelling is within the purview of the evils sought to be remedied by the act, Borden Company v. Thomason, supra. Appellants' contention is overruled.

Appellants' contentions with regard to rules 1.09 and 2.08 were previously discussed and do not constitute a different burden on the processors than was contemplated in the act.

■ With regard to rules 2.06 and 2.07, appellants contend that the commissioner has changed the Missouri law into a price-fixing statute. Their authority for that proposition is Terry Carpenter, Inc. v. Nebraska Liquor Control Commission, 175 Neb. 26, 120 N.W.2d 374. The Nebraska case is readily distinguishable. There the commissioner decided the chaotic liquor sales situation required a rule that no liquor could be sold for less than 15% above cost, without any provision for meeting competition or allowing free and unilateral price change. Price-filing and price-fixing are not the same concept at all. In Missouri, filing is required, but changes are freely allowed as long as it does not lower the price of the milk below the processor or distributor's cost with the intent or effect of diverting trade unfairly or injuring competition. The rules do not on their face change Missouri's law into a price-fixing law.

■ Appellants contend that rule 4.01 expands the circumstances and types of investigations which the commissioner can make under Sec. 416.450 and is patently an unlawful exercise of the rule making power. From our reading, rule 4.01 appears innocuous on its face. Appellants have not shown us how the commissioner could expand his powers nor do we think of any instances. Appellants have failed to meet their burden of proof. The contention is overruled.

■ On the constitutional point, the question of the constitutionality of the Unfair Milk Sales Practices Act, including the alleged special legislation claim reasserted in the present case, was fully adjudicated and settled by this court, after an intensive and all-embracing attack, in Borden Company v. Thomason, supra. The Borden Company case was decided in 1962. There has been no change of consequence in the act in the meantime, except for the amendment made in 1963 in Sec. 416.450 discussed earlier in connection with the attack on rules 2.06, 2.07, 2.08 and 2.11. There is no contention, and we do not think there could be, that the 1963 amendment affected constitutionality. Therefore, as to constitutionality, the act is substantially the same now as it was at the time of the Borden decision and we see no need to relitigate the matter. Since the act is constitutional, and as we have shown, the challenged rules are reasonable implementations of the authority granted to the commissioner under the act and are in furtherance of the legislative purpose contemplated by the act, it follows that the rules, too, are constitutional.

We believe the trial court was correct in denying injunctive relief and in declaring that the rules and regulations promulgated by the commissioner are not unreasonable, arbitrary, or inconsistent with the statute, nor in excess of the statutory authority of the commissioner. We therefore affirm the judgment and dissolve our order staying the enforcement of the rules pending this appeal.

All concur except FINCH, C. J., who concurs in separate opinion filed.

FINCH, Chief Justice (concurring).

I have concluded to concur in the principal opinion on the basis of the explanatory statement which follows.

In the brief filed herein on behalf of respondents, which include the Commissioner of Agriculture and the Attorney General, appears the following statement:

"The effort of the regulations is to define and identify those activities which, in

the judgment of the administrative officers charged with the duty of enforcing the Act, are the type of activities prohibited by the General Assembly. The effect of the regulations is that if such activities are engaged in, they will be considered by the Commissioner to be *prima facie* evidence of a violation of the Act. This does not eliminate the Commissioner's burden of establishing in any subsequent proceeding that the acts were done with the requisite intent or effect, nor is there any attempted alteration of the statutory burden of proof or risk of non-persuasion, as described in State ex rel. Davis v. Thrifty Foodliner, Inc., 432 S.W.2d 287 (Mo.1968)."

The principal opinion holds that the effect of the rules promulgated by the Commissioner is to create a rebuttable presumption only and that they do not change the burden of proof, including the rule of non-persuasion. In so stating it is my understanding that the opinion holds exactly what respondents have stated above, and that the opinion does not accord any greater effect to the regulations than is contended for by respondents in the foregoing statement.