**STATE of Missouri, Respondent,**

v.

**James CLARK, Appellant.**

No. 58018.

Supreme Court of Missouri,
En Banc.

May 14, 1973.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, for respondent.

James L. McMullin, Hill & McMullin, Kansas City, for appellant.

DONNELLY, Judge.

Appellant, James Clark, was convicted of murder in the first degree by a jury in the Circuit Court of Jackson County, Missouri, and his punishment was assessed at death. Following rendition of judgment and imposition of sentence on July 6, 1972, an appeal was taken to this Court.

■ This Court does not have jurisdiction of this case under Art. V, § 3, Const. of Missouri, V.A.M.S., Parks v. State, 492 S.W.2d 746 (Mo.1973). We retain and decide the case under authority of Art. V, § 10, Const. of Missouri, for the reasons stated in Foremost-McKesson, Inc., v. Davis, 488 S.W.2d 193, 196 (Mo.1972), and because the death penalty was imposed.

On November 11, 1970, the body of Elizabeth Leinbach was found in the north living room of her home at 3435 East 60th Street in Jackson County, Missouri.

An investigation disclosed appellant's palm print on a lamp found in the residence and appellant's fingerprint on a small board found in the residence. A portable radio missing from the Leinbach residence was found at appellant's house.

Police Officer Gary Van Buskirk took a statement which appellant refused to sign. Van Buskirk's testimony as to the statement is as follows:

"Q. All right. Did you then interrogate him concerning the death of Elizabeth Leinbach— A. Yes, sir, I did—

Q. —that occurred November 11th, 1970, at 3435 East 60th Street, sir? A. Yes, sir.

Q. And would you relate to the jury what he told you and Riddell that day?

A. O.K. The first ten minutes of questioning he denied any knowledge whatsoever of the homicide of Elizabeth Leinbach. Then he did say finally, 'I'll tell you what I remember.' And then his next statement was: 'I only remember coming out of the house.' And at this time I showed him two eight-by-ten photos showing the front and rear door of the residence, 3435 East 60th Street. And then I asked him the following questions:

'Question: Which door did you come out, front or back?

'Answer: The back door.

'Question: How did you gain entry into the house at 3435 East 60th Street?

'Answer: I forced the back door open.

'Question: How did you force the back door open?

'Answer: I just forced it open, I think I kicked it.

'Question: What time was it?

'Answer: I don't know, it was dark.

'Question: What happened after you forced open the back door?

'Answer: I went into the kitchen and the old lady saw me and she started screaming, and I started beating her.

'Question: What did you beat her with?

'Answer: My fists.

'Question: What happened next?

'Answer: I just kept beating her into the living room and I tore off her clothes.

'Question: What did you do then?

'Answer: I went upstairs and tried to wash up.

'Question: Do you mean, to get the old lady's blood off?

'Answer: Yes.

'Question: Did you take your clothes off?

'Answer: Not all of them.

'Question: What articles of clothing did you take off?

'Answer: My sweater and T-shirt.

'Question: Did you leave them in the house?

'Answer: I left my T-shirt, that's all.

'Question: What kind of sweater did you have?

'Answer: A blue pullover.

'Question: Where about in the house did you leave your T-shirt?

'Answer: I don't know where I left it at.

'Question: Did you rape or perform any sex act on the old lady?

'Answer: No, I didn't.

'Question: Did the old lady say anything to you? Answer: No.

'Question: Did you take or tear all of the old lady's clothing off?

'Answer: I don't know, I guess I did. I don't remember.

'Question: Did you take anything from the house?

'Answer: Yes.

'Question: What did you take? Answer: A little radio.

'Question: Where did you take the radio from?

'Answer: When I came out of the bathroom I saw it sitting upstairs someplace and I took it.

'Question: Was the old lady dead when you left?

'Answer: Yes.'

"At this time the defendant started crying. Then he said: 'I didn't mean to do it. I don't know why I did.'

"He was very emotional at this time; I stopped questioning him altogether for four or five minutes so he could regain control of himself, and then the questioning was continued:

'Question: How did you happen to break into this house, for what reason?

'Answer: I don't know why I did.

'Question: Where had you been prior to breaking into the house?

'Answer: I had been out drinking some place but I don't know where.

'Question: Where did you go after leaving this house?

'Answer: I went home and went to bed.' "

Appellant first contends the trial court erred in giving Instruction No. 6 on murder in the first degree because "there was no evidence to justify the submission of deliberation * * *."

He points to his statement (related at trial by Officer Van Buskirk) that "the old lady * * * started screaming, and I started beating her," and argues in his brief as follows:

"The State's circumstantial evidence, independent of appellant's explanation of the crime adduced by the State, might have been sufficient to justify an inference of murder in the first degree but the statements made by defendant as testified to by Officer Van Buskirk, conclusively prove the absence of one element of murder first degree—deliberation in a cool state of the blood,—and shows that he acted suddenly, impulsively, and without deliberation in probable fear of discovery."

* * * * * *

"The evidence here, the only evidence bearing upon the commission of the crime, shows an impulsive and sudden striking of the deceased when she screamed. The old lady doubtless screamed in fear and the appellant responded with a like feeling—fear of being discovered in the house unlawfully and he impulsively undertook to prevent that discovery by silencing her with his fist."

▉ We believe appellant's contention is without merit. "The State is not bound by, or compelled to accept as true, self-serving statements contained in an accused's admission even though introduced in the State's case." State v. Caffey, 457 S.W.2d 657, 664 (Mo.1970). The jury could believe or disbelieve such statements. It was not error to submit the issue of deliberation to the jury on the basis of all the circumstances in evidence.

In State v. Davis, 400 S.W.2d 141, 145, 146 (Mo.1966), this Court said:

"We first consider the sufficiency of the evidence to sustain a conviction for first degree murder. The basic statutory requirements are willfulness, deliberation and premeditation. * * * The distinction between first and second degree murder lies in the existence or nonexistence of deliberation. * * * The willfulness, deliberation and premeditation required for a conviction of first degree murder may all be inferred from and established by the circumstances attending a homicide."

* * * * * *

"Under the authorities it appears that a finding of deliberation depends not so much upon the time element as it does

upon an inference, reasonably drawn from the evidence, that the defendant performed the act in a cool and deliberate state of mind."

We consider the evidence sufficient to sustain the conviction for first degree murder.

■ Appellant next contends the trial court erred in receiving in evidence colored slides showing wounds on deceased's body.

In State v. Moore, 303 S.W.2d 60, 65 (Mo.1957), this Court spoke of admittedly gruesome photographs as follows: "The rule as to the admissibility of this sort of visual evidence is well settled. Demonstrative evidence of this character is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue."

We have viewed the slides in this case and they are gruesome. However, we believe they were admissible upon material matters at issue, particularly to prove the element of deliberation.

■ We are of the opinion that there was no reversible error in the trial of the issues relating to appellant's guilt. However, the punishment assessed must be reduced to imprisonment for life. State v. Cuckovich, 485 S.W.2d 16 (Mo.1972).

It is ordered that the Clerk of this Court forthwith furnish the Warden of the State Penitentiary and the State Department of Corrections with certified copies of this order and judgment.

As so modified, the judgment is affirmed.

SEILER, MORGAN, HOLMAN and HENLEY, JJ., concur.

FINCH, C. J., concurs in separate concurring opinion filed.

BARDGETT, J., concurs and concurs in separate concurring opinion of FINCH, C. J.

FINCH, Chief Justice (concurring).

I expressed my views with reference to jurisdiction in cases such as this in my dissenting opinion in Parks v. State, 492 S.W.2d 746 (Mo. banc 1973). I am bound by the majority decision in Parks and hence I defer thereto and concur in this opinion.