**MISSOURIANS FOR HONEST ELECTIONS a corporation, et al., Plaintiffs-Appellants,**

v.

**MISSOURI ELECTIONS COMMISSION et al., Defendants-Respondents.**

No. 37875.

Missouri Court of Appeals, St. Louis District, En Banc.

Feb. 26, 1976.

Motion for Rehearing or Transfer Denied April 13, 1976.

Application to Transfer Denied June 14, 1976.

Lewis C. Green, St. Louis, for plaintiffs-appellants.

John W. Inglish, Jefferson City, for defendants-respondents.

SMITH, Chief Judge, and SIMEONE, Presiding Judge.

This is an appeal by the appellants-Missourians for Honest Elections and two individuals [1] from an order of the circuit court of St. Louis County entered on February 6, 1976, denying relief which sought to review a rule of the Missouri Elections Commission under the Administrative Procedure Act. § 536.050, RSMo 1969.[2]

This appeal, in which the parties do not raise any constitutional issues, questions the validity of Rule 33 [3] of the Missouri Elections Commission, which requires that a candidate for public office in the state file a report concerning economic disclosure even though such candidate has not or does not

---

1. Robert J. Cook is a candidate for the office of Alderman in Brentwood, an office to which he has been elected four terms. He states that the Rule which requires him to list his sources of income is "burdensome" and requires him to "disclose personal information which if disclosed, would subject me and my family to undue and unnecessary public scrutiny."

Mr. Paul C. Schwarz has been a member of the Lindberg School District board six times having served a total of 18 years. He has withdrawn as a candidate this year. He states that he is a taxidermist and the Rule requiring him to list his sources of income would require a list of each client who paid him $500. This, he says, would subject him and his family and associates to "undue and unnecessary public scrutiny." It would also subject the clients to public disclosure.

2. The League of Women Voters requested and was granted leave to file a brief as *amicus curiae.*

3. "Rule Number 33
Adopted December 12, 1975
A Rule determining that the reporting exemption available to candidates meeting cer-

tain qualifications as provided in section 8.1, does not extend to the items of economic disclosure defined in Section 7.1(4), (5), and (6).

WHEREAS, there has been considerable concern expressed by citizens, prospective candidates, and election officials from throughout the state relative to the economic disclosure provisions of the Missouri Campaign Finance and Disclosure Law as adopted by the voters on November 5, 1974, as Proposition No. 1; and particularly with regard to the exemption provision contained in Section 8 thereof; and

WHEREAS, the Missouri Elections Commission recognizes that Section 7.1 of the Campaign Finance and Disclosure Act requires three kinds of reporting by candidates, to-wit: campaign contributions received, campaign expenditures made, and economic disclosure; and

WHEREAS, the Commission recognizes that Section 8.1 of the Act specifically exempts candidates from reporting their campaign contributions or expenditures, if they meet the $500 or less qualification; and

WHEREAS, the Commission recognizes that Section 8.1 of the Act does not specifically

intend to expend more than $500 on a campaign seeking public office. The appeal questions the ruling of the court below (1) in upholding the validity of Rule 33 because it is contrary to the "language, purpose and legislative history of the Campaign Finance Reform Act," and (2) "in ruling that Section 8[4] of the Act does not authorize the exemption of a candidate for public office who, neither receives nor expends more than $500 on his campaign, from filing any portion of the report of 'contributions received and expenditures made' required by Section 7.1[5] of the Act."

exempt candidates from economic disclosure; and

WHEREAS, the Commission recognizes the existence of some ambiguity in Section 8 and other Sections of the Campaign Finance and Disclosure Act; and

WHEREAS, the Commission has not found such ambiguities to warrant an interpretation of Section 8.1 which would extend the exemption of that Section to financial disclosure;

NOW, THEREFORE, THE COMMISSION RULES that candidates filing the exemption affidavit provided for in Section 8 1 of the Missouri Campaign Finance and Disclosure Law are exempt from reporting the campaign contributions and expenditures required by Section 7.1(1), (2), and (3), or political committees filing the exemption affidavit provided for in Section 8.1 of the Act are exempt from reporting the campaign contributions and expenditures required by Section 7.2(1), (2), (3), and (4), but candidates are not exempt from reporting the economic information required by Section 7.1(4), (5), and (6)."

4. "Section 8. 1. The provisions of this act regarding the reporting of campaign contributions and expenditures shall not apply to any candidate or to any political committee acting for, on behalf of, or, in favor of any candidate if the candidate or political committee does not in the aggregate receive or expend more than five hundred dollars for any election and files the exemption affidavit required by this subsection. However, this exemption from reporting does not excuse a candidate or committee from complying with all other requirements of this act. If a candidate or political committee desires to be exempt from the reporting provisions of this act, the candidate or the treasurer of the committee shall, not later than thirty days prior to the date of the election, file a notice with the appropriate officer, of its intention to be exempt from the reporting provisions and it shall be exempt. No political committee may file such exemption affidavit without prior written approval of the candidate or candidates it supports. Only one political committee supporting a candidate may elect to be exempted from the reporting provisions of this section, unless the candidate has elected to be exempt from the reporting provisions, in which case no political committee supporting such a candidate may elect the exemption. The appropriate officer shall not accept more than one exemption affidavit per candidate, from either the candidate or from any committee supporting his candidacy."

5. "Section 7. 1. Every candidate shall file reports in writing with the appropriate officer, at the times prescribed in Section 9. The reports shall be subscribed and sworn to by the candidate before an officer authorized to administer oaths, setting forth in detail all contributions received and expenditures made by the candidate in endeavoring to secure his nomination or election. Each report shall set forth:

(1) An itemized listing of all contributions received by the candidate including transfers of funds from the candidate's previous campaign fund, the name and address of each contributor, the amount contributed, and the date the contribution was received; the names and addresses of persons who contributed an aggregate amount of twenty-five dollars or less need not be listed in the report, and instead may be grouped as one item and so identified;

(2) An itemized listing of all expenditures made by the candidate, the name and address of the person to whom the amounts were paid or promised, the purpose for which the expenditures were made, and the date of the expenditures; and

(3) An itemized listing of any anonymous contributions which were transmitted to the state treasurer, the amount of each such contribution, and the date transmitted.

(4) A specific itemized listing of any business or investment in which the candidate or the candidate's spouse or minor children have a financial interest in excess of one thousand dollars.

(5) A specific listing of the source, by name and address, of any gifts or income in excess of one hundred dollars received by the candidate or the candidate's spouse or minor children during the preceding twelve months or the time of the last report, whichever is later.

(6) A specific listing of the source, by name and address, of any gifts, salaries, fees, or other income which for the twelve month period preceding the filing date individually or in the aggregate exceeds five hundred dollars which has been paid on behalf of or for services rendered by the candidate to any sole proprietorship, partnership or corporation in which the candidate or the candidate's spouse holds an interest of ten percent or more."

The facts are not difficult but the legal issues presented are of great significance.

During the 1974 Session of the General Assembly "campaign reform" legislation was introduced and debated. No campaign law was, however, passed. After the General Assembly failed to pass a campaign reform act, an ad hoc group of legislators and other interested persons decided to draft and circulate an initiative petition to fill the campaign reform vacuum. In due course, the group formed itself into an organization known as the "Missourians for Honest Elections" (MHE). The group assigned a small number of persons to draft an initiative measure in the words of the appellants "in an extremely short period" and took as their starting point the conference committee substitute which was approved by the House. The required signatures were obtained. MHE spearheaded the citizen's effort to persuade the voters to approve the proposition. Some 400,000 brochures were distributed, press releases were sent, various organizations participated, and finally on November 5, 1974 the Proposition No. 1 was overwhelmingly adopted by the people of Missouri and the Campaign Finance Reform Act became effective January 1, 1975.

As stated, the drafters of the proposition took as their starting point the legislative proposal. The proposed legislation did not contain the specific provisions of subsections (4), (5) and (6) of Section 7.1, but only contained subsections (1), (2) and (3). These three subsections—(4), (5) and (6)—were added by the drafters of Proposition No. 1 after the proposed legislation failed. These

additional clauses were added "in an effort to ferret out 'hidden' campaign contributions." [6]

During the campaign differing interpretations of the Act were noted by the proponents and opponents. The differing interpretations were "hotly debated." But the Act was passed and became law.

After the Act became law the Missouri Elections Commission adopted Rule 33 on December 12, 1975, which held that the reporting of exemptions available to candidates meeting certain requirements would not extend to economic disclosures of candidates. Plaintiffs then sought declaratory and injunctive relief in the court below, alleging that Rule 33 is invalid and in violation of the Act as adopted by the people. The trial court denied relief, and plaintiffs appeal to this court.

Appellants urge us to reverse the trial court because (1) Section 8 of the Act on its face exempts "small candidates" [7] from "all" reporting provisions of the Act, (2) Rule 33 would be destructive of the legislative purpose in that the "small candidate" who does not receive or expend more than $500.00 is not within the "primary target" area of the legislation, which area is designed only to "curb the abuses of 'big money' in election campaigns," (3) "the 'legislative history' of the campaign for adoption of the initiative proposition demonstrates that the people intended that a candidate who receives or spends not more than $500 should be exempt from *all* reporting requirements of the Act" [8] (emphasis added); and (4) the draftsmen of the initiative proposition clearly intended that "small

---

6. The brief of appellants states that the draftsmen of the initiative petition thought that an effort should be made to require disclosure of what they regarded as "hidden" contributions, such as retainer fees paid to law firms of which legislators are members, or gifts to the candidate or his wife, or the transfer of ownership of investment assets without full consideration. Accordingly, using as their starting point an unsuccessful amendment offered on the floor of the Senate, they added subparagraphs 4, 5, and 6.

7. A better term could have been used, such as "candidates for minor public offices."

8. The appellants have provided us with an appendix to the brief which includes many newspaper articles and editorials, affidavits and brochures which indicate that the speakers, brochures, pamphlets and the MHE informed the public prior to the vote on Proposition No. 1 (Elections Reform Act) that "Proposition No. 1 will . . . provide exemption for 'small' candidates. Although records must be kept, a candidate need *not* file *any report* if he files a statement that he and his committee will not spend more than $500." (Emphasis in original.) These statements and assurances were made in over 400,000 brochures. Various organizations including the League of Women

candidates" should be exempt from the reporting requirements of Section 7 "in their entirety."

Appellants vigorously urge us to give the Act, which reforms the political process by the initiative, "sympathetic reception" because the exercise of the initiative is one of the most fundamental rights of the people. They argue that if Rule 33 is to be upheld it would be destructive of the legislative purpose because the law was not intended to apply to these minor offices, and would defeat the purpose of the exemption and lead to absurd results. In sum, they contend that the "record is uncontroverted. The League of Women Voters, Common Cause, numerous church organizations, and many other organizations and 78% of the voters, relied on the assurances of the proponents repeatedly reported to them by the media, and brought to them by the campaign literature." Hence, this was the intent of the voters and such intent is persuasive in interpreting the provisions of the Act.

The respondents, on the other hand, contend that the Rule is valid and entitled to

"great weight" and if the Act is ambiguous and the governmental agency charged with its administration and enforcement interprets it, that interpretation is entitled to "consideration and the highest respect" from the courts.

■ The only issue confronting us is whether Rule 33 is valid.[9] Or, put another way, the only issue confronting us is whether a candidate for public office is required to make economic disclosure as provided in Section 7.1, subsections (4), (5) and (6) of the Act, whether or not the candidate [10] receives or expends more than $500 in the aggregate for any election, or whether such candidates are, under Section 8, exempt from all disclosures under Section 7.1.

The scope of our review is governed by two rules. Rule 100.07 dealing with administrative review allows us to determine whether the action of the agency is in excess of its statutory authority or jurisdiction or is unauthorized by law. Rule 73.01 establishes our review in court-tried cases and warrants our determination of the case upon both the law and the evidence. Since there was no testimony, only documentary

---

Voters, National Association of Social Workers, Common Cause, and National Education Association so informed the public. Many newspapers so informed the public. In some instances the proposed law was explained from the "pulpit." The thrust of all the articles, speeches and brochures was to inform the public that the Act exempted "small candidates" from filing any reports if a statement is filed that not more than $500 will be spent on a campaign.

Appellants' brief states that the categorical statement that Proposition No. 1 provides exemption for "small candidates" was repeated many times and emphasized in press releases throughout the State.

9. "Appellants in seeking to overturn administrative rules and regulations bear a heavy burden, as we said in *King v. Priest* (banc), 357 Mo. 68, 206 S.W.2d 547, 552: 'In view of the broad authority granted respondents by statute, supra, and the admitted adoption of the rule pursuant thereto, the rule must be regarded as prima facie reasonable . . . The burden rested upon appellants to plead facts to show the invalidity of the rule . . . Only in a clear case will the courts interfere on the ground of unreasonableness . . . .'

"Rules and regulations are to be sustained unless unreasonable and plainly inconsistent with the act, and they are not to be overruled except for weighty reasons. *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; *King v. Priest*, supra. The burden is upon those challenging the rules to show that they bear no reasonable relationship to the legislative objective. *King v. Priest*, supra; *Ketring v. Sturges* (Mo.Sup.), 372 S.W.2d 104. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. *Federal Trade Commission v. Mandel Brothers, Inc.*, 359 U.S. 385, 391, 79 S.Ct. 818, 3 L.Ed.2d 893; *Ketring v. Sturges*, supra; *State ex rel. Curators v. Neill* (Mo.Sup.), 397 S.W.2d 666, 670. Administrative rules should be reviewed in light of the evil they seek to cure and are not unreasonable merely because they are burdensome. *Borden Company v. Thomason*, supra." *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197–198 (Mo.banc 1972).

10. A "candidate" is defined in Section 2, subsection 6—" 'Candidate,' an individual who seeks nomination or election to public office. . . . ."

evidence, we are not limited by the usual deference on credibility. Additionally, the facts are undisputed and both the agency determination and that of the trial court are based upon a determination of the legal meaning of the basic statute. The powers of the Commission are set forth in Section 13 of the Act.[11] The regulations made by the Commission must be consistent with the provisions of the Act. And under Rule 84.14, we should give such judgment as the court ought to give. We, therefore, examine Rule 33 in that context.

■ We start with the proposition that the Commission cannot by rule change the substantive requirements of the law. If, therefore, Section 8 does not provide an exemption from financial disclosure required in Section 7.1, subsections (4), (5) and (6) for candidates receiving or expending less than $500 for any election, the judgment of the trial court upholding the validity of Rule 33 must be affirmed. We do not find such an exemption.

Section 8 expressly refers to "The provisions of this act regarding the reporting of campaign contributions and expenditures . . ." Section 2(7) defines "contributions" or "expenditures" as "any advance, conveyance, deposit, distribution, transfer of funds, payment, gift, pledge, or subscription of money or anything of value, *in sup-*

*port of or in opposition to any candidate or political committee . . . ."* (Emphasis supplied).

■ Section 7.1, subsections (1), (2) and (3) require the reporting of items specifically referred to as "contributions" or "expenditures." Section 7.1, subsections (4), (5) and (6) require the reporting of financial information which does not necessarily meet the definition of "contribution" or "expenditure" in Section 2(7). While the general reporting language refers to "contributions" and "expenditures," the specific information required in (4), (5) and (6) goes beyond those terms. As noted, the exemption provided by Section 8 is from "the reporting of campaign contributions and expenditures." It gives no exemption beyond those items, and we cannot by judicial fiat create an additional exemption where one does not exist.

■ Plaintiffs have asserted that the terms "contribution" and "expenditure" encompass all of the information required to be reported under Section 7.1, subsections (1) through (6). Those two terms, in addition to being specifically defined, are used extensively throughout the Act. To engraft such a definition upon those words would result in absurdity. Two instances will suffice. Section 2(6) defines a "Candidate" and provides that he is "deemed to

11. "Section 13. The commission is empowered to:
 1. From time to time make, amend, and rescind such rules and regulations as are necessary to carry out the provisions of this act, including rules governing statements and reports and defining any terms whether or not used in this act insofar as the definitions are not inconsistent with the provisions of this act. For the purposes of rules, regulations and forms, the Commission may classify persons and matters within its jurisdiction and may prescribe different requirements for different classes;
 (1) No rule, form or regulation may be made, amended, or rescinded, unless the Commission finds that the action is necessary or appropriate in the public interest and consistent with the purpose fairly intended by the policy and provisions of this act.
 (2) No provision of this act imposing any liability applies to any act done or omitted in good faith in conformity with any rule, regulation or form of the Commission, notwithstanding that the rule, regulation or form may later be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.
 2. Issue, upon request, and publish advisory opinions upon the requirements of this act, based on a real or hypothetical set of circumstances.
 3. File for such injunctive or other equitable relief as may be appropriate, in the Circuit Court of the county in which the violation is occurring or threatened, or in which the candidate resides, upon determining to the Commission's satisfaction that violations are occurring or threatened.
 4. Commence in its name and prosecute any action under this act in the county where any violation may occur."

seek nomination or election when he first: (a) Receives contributions or makes expenditures . . . ." Section 7.1(5) and (6) requires a listing of all income. If income is a "contribution," then presumptively every working man, woman and child in the state is a "candidate" subject to the reporting and other provisions of the law. Under Section 4, subsection (5), no labor organization, bank, trust company or corporation wherever organized can "directly or indirectly, make a contribution or expenditure in connection with any primary, general, or special election in support or of in opposition to any candidate . . . ." If income is a "contribution," then no corporation can pay a dividend to a stockholder running for office or employ a candidate running for office or his spouse or minor children. No bank could pay interest to a depositor running for office. And it must be remembered that the Act applies to all candidates for public office including school boards, municipal offices and a myriad of other offices, many part-time and some without pay. Section 2, subsection (5).[12]

■ We also must consider that the requirements of reporting contained in (4) (5) and (6) were intended to have a remedial purpose. Plaintiffs contend that purpose was to "ferret out hidden contributions." But, if "contributions and expenditures" encompass all 6 subparagraphs of Section 7.1 then the financial disclosure provisions serve little or no purpose at all. The act requires those contributions received and expenditures made "by the candidate in endeavoring to secure his nomination or election" be reported. "Hidden contributions" are required to be disclosed under (1), (2) and (3). Subparagraphs (4), (5) and (6) serve to ferret them out only if the candidate must report the items specified therein. But, under plaintiff's theory, the candidate must report those items only if he concludes they were received "in endeavoring to secure his nomination or election" in

which case he must report them under (1), (2) and (3). Such a construction makes (4), (5) and (6) meaningless. An interpretation which would make portions of the Act an absurdity and render other parts meaningless should not be made.

While the plaintiffs state that the proposition was not intended to reach "conflicts of interest" but only "campaign financing" the ballot language does not make that apparent. It read: "Provides for a new campaign financing and *election* law to replace portions of the *present corrupt practices act*; limits contributions and expenditures in elections for public office; requires reporting of such contributions and expenditures; *requires disclosure of economic interests of a candidate and his family, and gifts and income received by a candidate or his family*; creates a bi-partisan election commission to administer the act; provides penalties for violations." (Emphasis supplied).

■ It is, of course, impossible to determine the precise intention of the electorate on a proposition such as this one. It is at least arguable that the voters believed it advisable that all candidates reveal financial interests which might affect their qualifications for office or their conduct in office. The provisions of the Act draw no distinction between "major" and "minor" offices; the question of exemption is solely in terms of the amount of money expended to run. Some major candidates could run in districts sufficiently "safe" to permit them to qualify for the exemption. Additionally, minor public officials often make decisions on matters involving large amounts of taxpayer money or important local governmental operations. The people may desire to know that a textbook salesman is running for the school board, an insurance broker for city councilman, or a man with an unknown interest in a paving company for mayor. We, therefore, cannot attribute an intent to the voters not ex-

12. Section 2. "(5) 'Public officer' or 'office', a congressional, statewide, legislative, judicial, county, municipal, school, or other political

subdivision office which is filled by a vote of the people."

pressly contained in the proposition voted on.

The words "contribution" and "expenditure" have a meaning which is consistently employed throughout the Act. We can find nothing that would authorize us to give them a different meaning when used in Section 8. Section 8 exempts the disclosure of "contributions" and "expenditures" as used throughout the Act; it does not exempt "business or investment", "gifts", "income", "salaries", "fees" or "other income" as those terms are used in Section 7, subsections (4), (5) and (6).

Appellants also argue that Section 8 of the Act exempts the filing of campaign contributions and expenditures and economic disclosure because of various references in Section 8 to exemption from reporting. Section 8 deals with an exemption and uses various terms relating to reporting: (1) "[T]his exemption from *reporting* does not excuse a candidate or committee from complying with all other requirements of this act"; (2) "If a candidate or political committee desires to be exempt from the *reporting provisions of this act*, the candidate or the treasurer of the committee shall, not later than thirty days prior to the date of the election, file a notice . . . of its intention to be exempt from the *reporting provisions* and it shall be exempt"; (3) Only one political committee supporting a candidate may elect to be exempted from the *reporting provisions of this section*, unless the candidate has elected to be exempt from the *reporting provisions*, in which case no political committee supporting such a candidate may elect the exemption. . . ."; (4) "3. If, after filing the exemption affidavit provided for by this section, the candidate or political committee subsequently determines it does not desire to be exempt from the *reporting requirements of this act*, . . . such rejection shall not be filed later than the seventh day prior to the election. The rejection of the exemption shall be accompanied by a full and complete report of all contributions and expenditures, as the candidate or committee would have been required to make under the provisions of Section 9 of this act on the thirtieth day prior to the election, and all other *reporting requirements* shall be complied with."

It is true that in two places in Section 8 there are references to an exemption from the "reporting provisions" or "reporting requirements" of the Act, but this exemption must be read in the context of the whole Act, and when read in conjunction with the many other provisions of the Act, the exemption relates to "campaign contributions and expenditures" referred to in numerous other sections and specifically in Section 8.1. When read in context with all other provisions of the Act, we cannot conclude that Section 8 exempts a candidate from economic disclosure required in Section 7.1.

 It is apparent to this court that the controversy between the parties is the direct result of the addition of Section 7, subsections (4), (5) and (6) to the prior drafts. In doing so, the drafters failed to determine what the effect of those additions would be upon other sections of the statute. But that oversight does not cause the language of the Act to become ambiguous. Whatever ambiguity exists is not in the Act, but in the difference between what the drafters thought they were doing and what was actually done.

Both parties and the trial court found the language of the Act to be ambiguous, and the parties therefore directed substantial attention to the effect to be given and the conclusions to be drawn from the campaign positions of the proponents and opponents of the Proposition. We do not find it necessary to analyze those positions. For it is our conclusion that the language of the Act in this regard is not ambiguous.

 Regardless of the pre-election intentions of the drafters of the Act, or the views of individual supporters or opponents of the Proposition, or the explanations of the media, the Proposition and its express language became the law of this state when the overwhelming majority of the voters adopted the Proposition. By that law we

are bound. Despite the evidence of the plaintiffs showing an intent that the law was not intended to include "small candidates," it must be held that once a law has been adopted, whether through legislative enactment or the initiative procedure, and its provisions are express and unambiguous, we are not at liberty to construe the language of an act or the words embodied therein in accordance with the intentions of its supporters or opponents. The function of the courts is to enforce the law according to its terms.

█ Statements and representations made before a vote on a proposition are not conclusive upon the courts. As stated in *St. Louis County v. State Highway Commission*, 409 S.W.2d 149, 152 (Mo.1966):

> "[I]t has been specifically held that statements and representations made before an election held to vote on a constitutional amendment . . . are neither conclusive nor persuasive evidence on the courts when called on to construe a particular proposition adopted. . . .
> This principle would apply to any legislative enactment. . . ."

We do not find *Drey v. McNary*, 529 S.W.2d 403 (Mo.banc 1975) to authorize a court to ignore the express language of an initiative proposal and find a voter intent not expressed in the language of the proposition. That case is factually quite different from this.

█ While the rules of statutory construction are well known, in ascertaining the meaning of a law, we must look to the express language of the Act irrespective of what was intended. The rational meaning of the express language of the Act must be given effect. The primary rule of statutory construction is to seek and ascertain the intent of the lawmaker, but this intent is ascertained from the words used. We have no right to read into an act an intent contrary to the phraseology. *City of St. Louis v. Crowe*, 376 S.W.2d 185, 190 (Mo. 1964); *State ex rel. Dravo Corporation v. Spradling*, 515 S.W.2d 512, 517 (Mo.1974);

*Richards v. Stuckenberg*, 478 S.W.2d 405, 408 (Mo.App.1972); see also Note, When Extrinsic Aids Will be Used—The Plain Meaning Rule, 1952 Wash.U.L.Q. 267; 2A Sutherland, Statutory Construction, § 4601 (4th ed. 1973); see cases collected in 26 Mo. Digest, Statutes, Key No. 181 (1953).

█ The function of the courts is not to change the directions and requirements embodied in the law as adopted by the people.

█ Certainly it is within the power of the people to prescribe informational standards and economic disclosure qualifications relative to seeking or holding public office. *Fritz v. Gorton*, 83 Wash.2d 275, 517 P.2d 911, 927 (banc 1974). Several states have now upheld "campaign disclosure laws." *County of Nevada v. MacMillen*, 11 Cal.3d 662, 114 Cal.Rptr. 345, 522 P.2d 1345 (banc 1974); *Montgomery County v. Walsh*, 274 Md. 502, 336 A.2d 97 (1975); *Fritz v. Gorton*, supra; *Illinois State Employees Association v. Walker*, 57 Ill.2d 512, 315 N.E.2d 9 (1974).

If certain provisions of the Act are regarded as burdensome, there are proper means and methods to correct such hardships. But until changed by appropriate methods, however sympathetic we are with the position of the plaintiffs, we uphold the economic disclosure provisions embodied in Section 7, subsections (4), (5) and (6) and hold that the trial court did not err in upholding the validity of Rule 33. We must conclude, therefore, that the Act does not exempt a candidate for public office from the economic disclosure provisions embodied in Section 7.1(4), (5) and (6).

The judgment is affirmed.

CLEMENS, KELLY, McMILLIAN and GUNN, JJ., concur.