Ray VOGT, Joseph Fitzmaurice, Carl Roth and Leroy Litzsinger, Plaintiffs-Respondents,

v.

Robert RIDGWAY, Robert W. Parker, Michael W. Bradshaw, Michael P. Bryan, Richard T. Stith, Jr., J. William Newbold, James C. Laflin, Members of Board of Trustees of Firemen and Policemen Retirement Fund, City of Clayton, Missouri, Defendants-Appellants.

No. 41130.

Missouri Court of Appeals, Eastern District, Division One.

May 20, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 1980.

---

**468**

Dalton W. Schreiber, John A. Turcotte, Jr., St. Louis, for defendants-appellants.

W. H. Leyhe, Jr., Clayton, for plaintiffs-respondents.

STEWART, Presiding Judge.

This is an action for declaratory judgment by retired members of the fire and police departments of the City of Clayton (plaintiffs) who are pensioners under a retirement plan established for such persons by Ordinance No. 1553 of the City of Clayton. The defendants, members of the Board of Trustees of the fund, have appealed from a judgment favorable to plaintiffs. We have been favored with a well reasoned brief by the City of Clayton as Amicus Curiae. We affirm the judgment of the trial court.

The primary issue presented is whether Section 12 of Ordinance No. 1553 provides for increase of retirement benefits for pensioners when the base salary of policemen and firemen on active duty with those departments is increased. We are thus called upon to interpret the Ordinance.

On January 29, 1953 the Board of Aldermen of the City of Clayton passed Ordinance No. 1553. In accordance with § 86.-583 RSMo 1969 the ordinance was submitted to the voters of the City and was duly ratified and adopted.

This ordinance makes provision for the retirement and payment of pensions to firemen and policemen of the City of Clayton who are retired or disabled by service or non-service injuries, and their widows and minor children. The ordinance also creates a retirement fund and provides for a board of trustees who have exclusive management and control of the plan and the retirement fund.

The ordinance further provides that the funds shall consist of (1) the proceeds of a maximum one mill tax levied by the City upon all taxable real and personal property within the city, (2) earnings from a Fourth of July fireworks display and other entertainment programs, (3) earnings on the investments of the fund, (4) gifts, grants and legacies, and (5) contributions from firemen and police officers of 3% of a fireman's or policeman's current monthly salary. The ordinance also contains provisions for eligibility and the amounts of the payment to eligible persons.

The controversial portion of the ordinance is Section 12 which in pertinent part reads as follows:

"[T]here shall be paid from the Retirement Fund herein created, to each covered employee of the Fire and Police Departments found eligible to retire, due to length of service, as provided in Section 9 hereof, a monthly sum equal to fifty percent (50%) of the base salary of a fireman or policeman . . .. [A qualifying] surviving widow shall be paid the sum equal to twenty-five percent (25%) of the deceased husband's base salary as determined by the Board of Trustees and until the death or remarriage of such widow. In addition thereto, if any such covered employee leave surviving him a minor

unmarried child or children under the age of eighteen (18) years, there shall be paid to the lawful guardian of such child or children a sum equal to five percent (5%) of the monthly salary of the covered employee for each of such children . . . provided, that in no case shall the combined payments to the widow and eligible children aggregate more than fifty percent (50%) of the base salary as determined by the Board of Trustees."

The trial court found that it was the intention of the Board of Aldermen and of the voters of the City of Clayton that "base salary" in Section 12 is to be calculated each year,

"based on the percentage of base pay of firemen and policemen in effect at such time of payment during each year. Thus, the retirement payments hereafter shall be based on the base payment of firemen and policemen in effect at the time of said payments.

This order shall be retroactive only back to August 17, 1977, the date in which said cause of action was filed. Costs assessed against defendants."

■ In our review of this court tried case we are guided by Rule 73.01–3, the tenets of which have been so oft repeated that they need no further comment here. Findings of fact were not requested and none were made. We therefore consider the facts to have been found in accordance with the result reached. *Sanderson v. Richardson*, 432 S.W.2d 625 (Mo.App. 1968).

The principal purpose of the court in interpreting a legislative act is to determine the intent of the legislature from the words used, and they must be considered in pari materia with all of the sections of the legislation. *Chapman v. Sanders*, 528 S.W.2d 462, 465 (Mo.App. 1975). See also *Becker v. St. Francois County*, 421 S.W.2d 779, 784 (Mo. 1967).

The focus of our discussion is upon the phrase "the base salary of a fireman or policeman," as found in Section 12 of the ordinance.

■ The first reference to the term "base salary" of a fireman or policeman is found in Section 7 of the ordinance. It provides that every covered employee of the police and fire departments, "shall be assessed and required to pay into the Firemen and Policemen Retirement Fund herein created a sum equal to three percent (3%) of a Private Fireman's or Patrolman's then current monthly salary and such salary shall hereafter be termed 'base salary' of a Fireman or Patrolman."

Reading the ordinance in pari materia the phrase under consideration in Section 12 is clearly defined in Section 7. Prominent in the definition is the article "a" preceding the words "private fireman's or patrolman's" and the use of the article "a" in Section 12 before "fireman or policeman." This definition is given general application by the language of Section 7.

When this definition is applied to Section 12 the pertinent parts of that section would provide that the fund would pay a covered employee "found eligible to retire, due to length of service, as provided in Section 9 hereof, a monthly sum equal to fifty percent (50%) of the base salary of a fireman or policeman [i.e. of a private fireman's or patrolman's then current monthly salary]."

Where the compensation is to be limited the ordinance specifically provides that payments from the fund are restricted to a person's salary as of the time of eligibility. By way of example, the ordinance distinguishes between service and non-service connected injuries, in providing for pensions of covered employees who are required to retire because of injuries, and in providing for their spouse and minor children in the event of accidental death. In the case of service connected disability or death the covered employee or his dependents receive the benefits to which they would be entitled upon normal retirement. By contrast, in the case of non-service injuries resulting in disability or death, Section 11 of the ordinance provides for "benefits equal to twenty-five percent (25%) of a fireman's or policeman's base salary at the time of disability and at his death . . . .."

■ We find that the trial court did not err in its interpretation of the ordinance. The court could find from the language of the ordinance that the term "base salary of a fireman or policeman" as used in Section 12 was intended to be determined each year based upon the then current salary of a private in the fire department or a patrolman in the police department.

Plaintiffs, defendants, and Amicus have urged the use of extrinsic evidence that was introduced in evidence as persuasive of their respective positions.

Plaintiffs, through oral testimony and by the use of minutes of the Board of Aldermen of the City of Clayton, introduced evidence of the legislative history of Ordinance 1553. This evidence tended to show that the focal phrase of Section 12 of the ordinance as originally introduced in the Board of Aldermen read, "a monthly sum equal to 50% of the monthly salary of a Fireman or Policeman in force at the time of retirement." The ordinance as finally enacted and presented to the voters deleted the words "in force at the time of retirement."

■ Legislative history, the surrounding circumstances and the ends sought to be accomplished may be considered where the legislation is ambiguous. *State ex rel. Zoological Park Subdistrict of City and County of St. Louis v. Jordan*, 521 S.W.2d 369, 372 (Mo. 1975). We have concluded that the statute is not ambiguous and have not considered this evidence in our determination.

Amicus Curiae has skillfully argued that the construction placed upon the ordinance by the trial court would result in a fiscally unsound plan and that such a result would ultimately defeat the purpose of the legislation. It argues that the trial court's construction of the ordinance should thus be rejected as unreasonable, and it cites *State ex rel. American Mfg. Co. v. Koeln*, 211 S.W. 31 (Mo. banc 1919) as support for its position. This contention is based upon the testimony of the actuary for the Board of Trustees. We observe first that this is extrinsic evidence and we have determined that there is no need to resort to such evidence in determining the meaning of the ordinance. If it could be said that the ordinance is ambiguous we would have to consider that it was the trial court that had the duty to determine the weight to be given to this expert's testimony. We have reviewed this evidence which consists of a conclusion of the witness from a study made by the witness for the Board of Trustees. The study was not put into evidence nor was the trial court made fully aware of the factual basis for the conclusion. Under the circumstances we would not be in a position to say that the trial court was compelled to find that the plan would be financially unsound under the interpretation urged by the plaintiffs. The major premise is without support and therefore we cannot conclude that the trial court erred in its interpretation of the ordinance based upon this argument.

Defendant urges us to consider that the Board of Trustees for the past 25 years has been paying pension benefits on the basis of the salary of a fireman or policeman at the time of his retirement. They contend that the interpretation of the administrative body charged with the administration of the fund should be given great weight. *Missourians For Honest Elections v. Missouri Elections Commission*, 536 S.W.2d 766, 771 (Mo. banc 1976). The difficulty with this position is that there was also evidence that for two or three years after Mr. Vogt retired in 1956 the Board of Trustees gave the ordinance the interpretation accorded it by the trial court. This would have been at a time much closer to the date of passage of the ordinance, which might tend to give greater weight to that interpretation.

We have however concluded that extrinsic evidence is unnecessary to an interpretation of this ordinance.

If we had determined that the ordinance was ambiguous we would have been required to construe the ordinance liberally in favor of the applicant, and we would have reached the same conclusion in this case. *Williams v. Board of Trustees of Public School Retirement System of Missouri*, 500 S.W.2d 31, 34 (Mo.App. 1973). See also *Newhauser v. Board of Trustees of Police*

*and Fire Relief,* 15 Cal.App.3d 322, 93 Cal. Rptr. 166 (1971).

■ Defendants also attack the ruling of the trial court as violative of Article VI, § 25. Under Article VI, § 25 (Mo.Const. of 1945, as amended 1948), which was applicable when the pension plan was adopted, it is provided that no city or other political subdivision "shall be authorized to lend its credit or grant public money or property to any private individual . . . except that the general assembly may authorize any municipality to provide for the pensioning of the salaried members of its organized police force or fire department . . . ."

In support of this contention defendants rely upon *Police Retirement System v. Kansas City,* 529 S.W.2d 388 (Mo. 1975). That case held that § 86.441, enacted in 1972, authorizing the Police Retirement System to make cost of living adjustments to base pensions of persons who had retired before the enactment of the statute as well as future pensioners, was in violation of Article VI, § 25 or Article III, § 39(3), as to persons who were retired before the effective date of the statute. As we read the case it holds that changes made to increase the pensions of retired public employees contrary to the formula for determining the amount of pension that was in existence at the time of retirement were in violation of either of the above constitutional provisions.[1] See page 391[1]. The trial court's interpretation of the ordinance in the case at bar is compatible with the constitutional provisions because pensions of retired employees are determined and fixed in accordance with the established applicable formula in effect at the time of their retirement. The City of Clayton has not legislated to provide pension benefits to employees who had retired prior to the effective date of the ordinance as argued by defendants.

For the reasons stated herein the judgment of the trial court is affirmed.

SNYDER and SIMON, JJ., concur.

1. The court specifically declined to determine whether pensions are gratuities or deferred compensation because if the former it violated

Art. VI, § 25. If the latter it violated Art. III, § 39(3). *Police Retirement System v. Kansas City* at 393.